PER CURIAM:
 

 Gulf Water Benefaction Company for the third time in a federal court presents a challenge to aspects of state utility rate-making. It also argues that the Bankruptcy Court should not have dismissed its Chapter XI petition, although it admits that no plan of arrangement can be confirmed until it has settled the rate-making dispute. Both the Bankruptcy Court and District Court before us ruled that the Johnson Act, 28 U.S.C. § 1342, deprived them of jurisdiction to consider the challenges and left Gulf
 
 *463
 
 Water to pursue its remedies in Texas state court. We affirm on the basis of Judge Seals’ complete and thorough opinion (attached as an appendix).
 

 AFFIRMED.
 

 APPENDIX
 

 Before the Court for consideration are two appeals by debtor-appellant, Gulf Water Benefaction Company (“Gulf Water”), from the bankruptcy court’s orders of dismissal entered in Bankruptcy Numbers HB-79-95 (See Chapter XI petition) and HB-79-95 Adversary G (ancillary adversary proceeding). Gulf Water is joined by Peoples National Utility Company (“Peoples”), a purported co-plaintiff in Adversary G,
 
 [1]
 
 in appealing the bankruptcy court’s dismissal of Adversary G. The respective appeals, filed in the United States district court under Civil Action Numbers H-80-1814 and H-80-1815, have been consolidated by this Court under Civil Action Number H-80-1814 for purposes of appellate review.
 

 Debtor-appellant Gulf Water is a Texas corporation engaged in the domestic sewerage treatment business. Through the operation of two sewer plants leased from Peoples, a water utility company, Gulf Water treats and processes the domestic sewerage of 775 residential consumers in North Harris County, Texas.
 

 Regulatory and State District Court Proceedings
 

 Prior to the institution of the bankruptcy proceedings which are the subject of these appeals, Gulf Water along with Peoples had sought utility rate increases before the Public Utility Commission of Texas
 
 **
 
 (PUC) in PUC docket 96. PUC, however, rejected the petition for rate increases and Gulf Water and Peoples appealed the regulatory commission’s decision to state district court. Pending appellate review by the district court in Travis County, Texas, Gulf Water and Peoples charged their customers higher utility rates than scheduled by the PUC. As a result of consumer complaints, the PUC held another rate hearing in PUC docket 1211 and established new rates. Gulf Water and Peoples, still dissatisfied, refused to obey these new rates and filed a second appeal in state district court (Cause No. 276,982). The PUC then brought suit (Cause No. 276,449) against Gulf Water and Peoples in state district court to enforce the Texas Public Utility Regulatory Act (“PURA”), Tex.Rev.Civ.Stat.Ann. art. 1446c, Vernon (1980). Subsequently, the PUC took a judgment nihil dicit in Cause No. 276,449.
 
 [2]
 
 At approximately the same time, the PUC also moved the state district court in Cause No. 276,982 to dismiss Gulf Water and Peoples’ second appeal of the PUC’s imposed rate level for lack of prosecution.
 

 Chapter XI Petition for Arrangement
 

 On February 14,1979, during the penden-cy of the preceding state court litigation,
 
 [3]
 
 Gulf Water filed its petition for arrangement in bankruptcy court under Chapter XI
 
 *464
 
 of the Bankruptcy Act, 11 U.S.C. § 1121. The basis of Gulf Water’s voluntary petition was its inability to meet its current financial obligations and recognition that it would be unable to meet its future business obligations because of inadequate revenue. Underlining Gulf Water’s insolvent financial condition was its failure to receive requested rate hikes from various local and state regulatory agencies. Thus, in its pleadings before the bankruptcy court, Gulf Water asserted that its “income is and has been inadequate because various regulatory authorities, ..., have endeavored to set the debtor’s rates at a level that amounts to a confiscation of [debtor’s] property without compensation.... (Debtor’s [proposed] Arrangement filed in Bankruptcy No. HB-79-95 on April 25, 1979, at 2).
 

 Adversaries A, B, C
 

 Shortly after Gulf Water filed its Chapter XI petition, the PUC filed a complaint in the bankruptcy proceeding (Adversary A) seeking a determination from the bankruptcy court as to whether the stay provisions of Bankruptcy Rule 11-44, 11 U.S.C., automatically stayed the pending state court litigation between Gulf Water and Peoples and the PUC and the State of Texas (Cause Nos. 276,449 and 276,982).
 

 On April 6,1979, Gulf Water and Peoples responded by filing a complaint (Adversary B) seeking to enjoin the PUC in both of the pending state court cases in the event that the bankruptcy court determined that the automatic stay provision was not applicable. Gulf Water and Peoples also attempted to file an amended complaint in this ancillary proceeding which sought a determination that the utility rates set by the PUC were unconstitutional and which further asked that the bankruptcy court set new utility rates that were constitutional. The bankruptcy court refused to allow the amended complaint in Adversary B on the ground that it would constitute surprise to the opposing parties.
 

 Gulf Water and Peoples then filed a second complaint (Adversary C) which requested essentially the same injunctive relief (staying the state court litigation) as previously requested in Adversary B along with a request that the bankruptcy court strike the PUC scheduled rates as being constitutionally void and that the bankruptcy court grant all the relief necessary to abate the existing condition of pollution.
 

 In Adversary A, the bankruptcy court ruled that the automatic stay provisions under Bankruptcy Rule 11-44 did not apply to the two actions pending in state district court. (Bankruptcy Court’s Order entered in Bankruptcy No. HB-79-95 Adversary A on September 11, 1979).
 

 In Adversary B, the bankruptcy court, after holding a trial on appellants’ request for injunctive relief, found that Gulf Water and Peoples were not entitled to an injunction against the PUC because they had failed to show the unavailability of an adequate remedy at law. The bankruptcy court also indicated that it was hesitant to intervene in a situation where the remedies available under state law had not yet been exhausted. Moreover, the bankruptcy court, recognizing that historically the power to regulate intrastate services such as utilities has been reserved to the states under the tenth amendment of the United States Constitution, advised the parties that it felt, under the circumstances of this case, that the state court would be the better forum for resolving this controversy. (Bankruptcy Court’s Memorandum Opinion entered in Bkrtcy., 1981, 2 B.R. 357).
 

 In Adversary C, the PUC filed a Motion to Strike or, in the Alternative, a Motion to Dismiss asserting that the issues raised in Adversary C were duplicitous of the issues raised in Adversary B and further did not state a claim upon which relief could be granted. Without notifying the PUC, Gulf Water and Peoples filed a Notice of Voluntary Dismissal Without Prejudice (“Notice”) in Adversary C. Upon learning of this Notice, the PUC filed a motion to vacate the voluntary dismissal. The bankruptcy court vacated plaintiffs’ notice of dismissal and then dismissed Adversary C after finding most of the allegations in Adversary C to be redundant of the issues raised and dis
 
 *465
 
 missed in Adversary B. As to the remaining issues in Adversary C [constitutionality of the utility rates and abatement of the pollution condition], the bankruptcy court dismissed these issues on the ground that it would again decline to exercise jurisdiction to intervene in a situation where the available state remedies had not been exhausted by the plaintiffs.
 

 Adversary G
 

 After failing to obtain the relief sought in Adversaries B and C, Gulf Water and Peoples filed a “Complaint to Enjoin Confiscation of Property, Complaint to Enjoin Continuance of Proceedings in Interference with Administration of Debtors’ Property; Complaint for Declaratory Relief and to Abate Pollution” on January 2, 1980.
 

 In Adversary G, Gulf Water and Peoples, as plaintiffs, asserted that the utility rates set by the PUC were unconstitutional and thus they were deprived of their civil rights because (1) the rates were so low as to be confiscatory and therefore amounted to a taking of property without just compensation and (2) plaintiffs were not accorded procedural due process since the notice sent to them by the PUC did not fairly appraise them that the PUC would consider a change in the utility rates at the hearing in PUC docket 1211. Accordingly, plaintiffs moved the bankruptcy court, pending a decision on the merits of Gulf Water’s petition for arrangement, to enjoin the PUC from enforcing the rates promulgated in PUC docket nos. 96 and 1211 and to enjoin the PUC and the State of Texas from enforcing the Judgment Nihil Dicit entered in Cause No. 276,449 in the state district court of Travis County. Plaintiffs further moved the bankruptcy court to rule that the utility rates fixed under state law were unconstitutional and to, in effect, impose a non-confiscatory rate which plaintiffs could charge to their customers.
 

 The bankruptcy court, having addressed these same issues in Adversaries B and C and after considering the pleadings, briefs and oral argument of counsel concluded that it should not exercise any jurisdiction it may have to fix or determine the proper utility rates for Gulf Water and that all other relief sought in Adversary G was ancillary to a determination of a utility rate. Accordingly, the bankruptcy court entered an order on June 24, 1980, dismissing Adversary G.
 

 On the same date, the bankruptcy court also entered an Order dismissing Gulf Water’s Chapter XI petition under Bankruptcy Rule 11-42 on the grounds that (1) the debtor has failed to prosecute its petition for arrangement with due diligence, (2) there is no reasonable prospect of the debt- or formulating a meaningful plan for arrangement in a reasonable time and (3) that the adjudication of the debtor as a bankrupt is not in the best interest of the debtor or its creditors.
 

 Appellees' Motions to Dismiss Appeals
 

 In view of the foregoing dismissals, Gulf Water and Peoples filed timely notices of appeal in the United States district court on July 2, 1980.
 

 Appellees, the State of Texas and the PUC, then filed motions to dismiss both appeals (Civil Action Nos. H-80-1814 and H-80-1815). Appellees urge in both cases that the appeals should be dismissed because the appellants failed to timely file their “Record on Appeal” pursuant to Rule 807 of the Federal Rules of Bankruptcy Procedure and Rule 11(a) of the Federal Rules of Appellate Procedure.
 

 Appellant, Gulf Water, in response, admitted its financial inability to provide a transcript of the record on appeal but argued that the issues delineated in Civil Action No. H-80-1815 could be decided solely on the record filed with the court without the necessity of a transcript. Appellant further argued that it was waiving the completion and filing of the transcript and electing to proceed on the record already on file with the court in both Civil Action Nos. H-80 1814 and H-80 1815.
 

 Appellees, in reply, asserted that a transcript is necessary in order to support the statement of issues raised by appellant on
 
 *466
 
 appeal. Moreover, the fact that appellant has waived completion of and filing of a transcript on appeal is just further evidence of appellant’s failure to perfect an appeal in both cases.
 

 The Court finds, in view of Rule 10(b)(2), F.R.A.P., that appellees’ reasoning is sound. Rule 10(b)(2) provides:
 

 If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, he
 
 shall
 
 include in the record a transcript of all evidence relevant to such finding or conclusion, (emphasis added).
 

 However, the Court further finds that the failure to provide a complete record on appeal is not jurisdictionally fatal. Rule 3(a), Fed.R.A.P., provides that the
 

 [fjailure of an appellant to take any step other than the timely filing of a notice of appeal
 
 does not affect the validity of the appeal,
 
 but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal, (emphasis added).
 

 Thus, it is clear that the dismissal of an appeal for failure to provide a complete transcript of the record on appeal is within the discretion of the court. The court is also mindful that “the drastic sanction of dismissal should not be imposed for minor infractions of the rules.” 9 Moore’s Federal Practice ¶ 210.05[1] at 10-26 n. 16. Thus, the Court, having considered the pleadings before it and having weighed the relative hardship and prejudice to the parties, together with an examination of the applicable law, concludes, in its discretion, that it should not dismiss the appeals but should decide those issues which can be reached on the record before it.
 
 See United States v. One Motor Yacht Named Mercury,
 
 527 F.2d 1112 (1st Cir. 1975).
 
 Cf. Marcaida v. Rascoe,
 
 569 F.2d 828, 830 (5th Cir. 1978) (failure to timely file an appellate brief).
 

 Issues on Appeal
 

 In Bankruptcy No. HB-79-95 (Chapter XI petition) debtor-appellant Gulf Water, raised two issues on appeal:
 

 1) Whether the Bankruptcy Judge erred in holding that the Debtor had failed to prosecute this proceeding with due diligence.
 

 2) Whether the Bankruptcy Judge erred in dismissing Debtor’s Proceedings because there appeared no reasonable prospect of the Debtor formulating a meaningful plan of arrangement in a reasonable time.
 

 In Bankruptcy No. HB-79-95 Adversary G, debtor-appellant Gulf Water and appellant Peoples raised seven issues on appeal:
 

 1) Whether the Bankruptcy Judge erred in abstaining from the exercise of jurisdiction which it might have, to fix or determine the proper utility rates for the plaintiffs.
 

 2) Whether the Bankruptcy Judge erred in holding that all other reliefs sought by the plaintiffs in this cause was ancillary to a determination of the proper utility rates for the plaintiffs.
 

 3) Whether or not the Bankruptcy Judge erred in refusing to take jurisdiction of the claim of the Plaintiffs for in-junctive relief from confiscatory rates forced upon them by the Defendants in this proceeding under police power based violation of the civil rights of the plaintiffs.
 

 4) Whether or not the Bankruptcy Judge erred in refusing to proceed to trial on the merit of Plaintiffs’ Complaint for Injunctive Relief against the alleged confiscatory rates described above.
 

 5) Whether or not the Bankruptcy Judge had jurisdiction under the Civil Rights Statutes, the Bankruptcy Act, and the Johnson Act to entertain Appellants and Plaintiffs suit for injunctive relief.
 

 6) Whether or not the Bankruptcy Judge erred in refusing discovery to plaintiffs, Gulf Water Benefaction Company, and Peoples National Utility Company, pursuant to a filed request for production.
 

 7) Whether or not the Bankruptcy Judge erred in assessing a One Thousand
 
 *467
 
 Dollar “penalty or fine” against Peoples National Utility Company for seeking production in this cause based on the assumption that Peoples National Utility Company was “not a proper party” to the proceeding.
 

 Legal Discussion
 

 In reviewing the records transmitted on appeal, it is clear that the ultimate relief sought by the debtor-appellant in all of the proceedings before the bankruptcy court was to have the bankruptcy court take over the utility rate-making process delegated by the State to the Public Utility Commission. The bankruptcy court, however, repeatedly ruled, under the circumstances presented before it, that it would not exercise any jurisdiction it might have to intervene into the state rate-making process.
 

 The bankruptcy court further found that the debtor-appellant had not yet exhausted its available state remedies. In Texas, the legal rates established by the Public Utility Commission under PURA § 43 are subject to judicial review under section 19 of the Texas Administrative Procedure and Texas Register Act (“TAPTRA”), Tex.Rev.Civ. Stat.Ann. art. 6252-13a (Vernon supp. 1980-1981), which sets forth the procedure for review and the grounds for reversal and remand by the court. Moreover, the Supreme Court of Texas had expressly held that the Legislature, in its enactment of TAPTRA, intended to substitute an adequate legal remedy for the equitable power of the court to review a rate order on the
 
 constitutional ground of confiscation,
 
 (emphasis added).
 
 Southwestern Bell Tel. Co. v. Public Utility Comm’n.,
 
 571 S.W.2d 503, 510 (Tex.1978).
 

 As previously stated, the power to regulate
 
 intrastate
 
 services such as utilities has historically been reserved to the states by Congress pursuant to the provisions of the tenth amendment of the United States Constitution.
 
 Public Utilities Commission for State of Kansas v. Landon,
 
 249 U.S. 236, 39 S.Ct. 389, 63 L.Ed. 791 (1919). In Texas, it is fundamental that the fixing of domestic utility rates is a legislative function of the state government.
 
 Southwestern Bell, Etc. v. Public Util., Etc.,
 
 615 S.W.2d 947, 953 (Tex.Civ.App.-Austin 1981),
 
 quoting, Railroad Commission v. Houston Natural Gas Corp.,
 
 155 Tex. 502, 289 S.W.2d 559 (1956). As the traditional forum for settling disputes of this nature, the state courts have a greater familiarity with matters at hand and are therefore better equipped to deal with problems of this nature.
 
 License Cases,
 
 5 Haw. 504, 46 U.S. 504, 12 L.Ed. 256 (1846). Thus, the bankruptcy court, when confronted with a state statute, a state regulatory agency and a highly technical matter involving a specialized area of state procedure (utility regulation), determined that the state court would be the better forum to resolve this utility rate controversy.
 

 As a general rule, federal courts should not intervene in the state rate-making process unless the remedy in state court is inadequate.
 
 Tennyson v. Gas Service Company,
 
 506 F.2d 1135, 1141 (10th Cir. 1974). The Court finds, as did the bankruptcy court, that state procedural remedies are available to the debtor-appellant. Furthermore, the Johnson Act, 28 U.S.C. § 1342, proscribes the exercise of federal jurisdiction over state rate-making functions unless four conditions are pleaded and proved.
 
 Moreno v. Lo-Vaca Gathering Co.,
 
 80 F.R.D. 282, 284 (W.D.Tex.1978).
 

 The Johnson Act provides:
 

 The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
 

 (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
 

 (2) The order does not interfere with interstate commerce; and
 

 (3) The order has been made after reasonable notice and hearing; and,
 

 (4) A plain, speedy and efficient remedy may be had in courts of such State.
 

 
 *468
 
 The clear intent of this Act is to channel normal rate litigation into the state courts; and, as in the present action, federal judicial review is particularly inappropriate where state proceedings are pending.
 
 See Brideport Hydraulic Co. v. Council on Water Co. Lands of State of Conn.,
 
 453 F.Supp. 942, 954 (D.C.Conn.1977),
 
 aff’d.,
 
 439 U.S. 999, 99 S.Ct. 606, 58 L.Ed.2d 674 (1978);
 
 City of Meridian, Miss. v. Mississippi Valley Gas Co.,
 
 214 F.2d 525, 526 (5th Cir. 1954).
 

 In the ancillary adversary proceeding (Adversary G), debtor-appellant attempted to invoke the bankruptcy court’s jurisdiction under 28 U.S.C. § 1342. The Court, however, concludes, for the following reasons, that debtor-appellant’s reliance on the Johnson Act is clearly misplaced. First, the Court finds that the debtor-appellant is purely a local utility, thus, it cannot seriously contend that PUC rate orders interfere with interstate commerce necessary to satisfy the second element under the Johnson Act. Second, the Court finds that the third element under the Johnson Act cannot be met because the debtor-appellant was afforded reasonable notice and a hearing prior to the implementation of the PUC imposed rate order.
 
 See
 
 Bankruptcy Court’s Memorandum Opinion on Request for Injunctions filed in Bankruptcy No. HB-79-95 Adversary G on March 4, 1980. Finally, it is clear that the administrative and judicial appeal procedures established by Texas statutes more than adequately protect the debtor-appellant from any possible infringement of its rights.
 
 See
 
 TAPTRA, Tex.Rev.Civ.Stat.Ann. art. 6252-13a §§ 13, 16 & 19 (Vernon 1979); PURA, Tex.Rev.Civ.Stat.Ann. art. 1446c §§ 13
 
 &
 
 69 (Vernon 1980); Comment, Public Utility Commission: Appellant Procedure & Judicial Review, 28 Baylor L.Rev. 1001 (1976). Accordingly, the Court concludes that the bankruptcy court properly refused to exercise its jurisdiction in this bankruptcy proceeding.
 

 As to whether the bankruptcy judge erred in holding that all other relief sought by the plaintiffs in Adversary G was ancillary to a determination of the proper utility rates, the Court finds that such matters would have required the bankruptcy court to have “enjoined, suspended or restrained” the order of the PUC. In view of the fact that the bankruptcy court properly abstained in the ancillary adversary proceeding, the Court finds no error. 28 U.S.C. § 1342.
 
 See Tennyson,
 
 506 F.2d 1135;
 
 DeKalb County v. Southern Bell Telephone & Telegraph Co.,
 
 358 F.Supp. 498 (N.D.Ga. 1972),
 
 aff’d.
 
 478 F.2d 700 (5th Cir. 1973).
 

 On April 22, 1980, the bankruptcy court held a hearing on defendants’ Motion for Protective Order filed in response to plaintiffs’ Request for Production filed in Adversary G on March 12, 1980. After the hearing, the bankruptcy court entered an order finding plaintiffs’ “Request for Production of Documents to be in all things unreasonable and the discovery requested is therefore denied.” (Bankruptcy Court’s Order in Bankruptcy No. HB-79-95 Adversary G filed May 19, 1980). It is clear that discovery motions fall within the broad discretionary powers of the trial court; and absent a clear showing of abuse, a reviewing court will not disturb the trial court’s discretion.
 
 Imperial Ethiopian Gov’t. v. Baruch-Foster Corp.,
 
 535 F.2d 334, 337 (5th Cir. 1976). While the Court has reviewed plaintiffs’ Request for Production and the responsive pleadings, it does not have a copy of the transcript of the bankruptcy court’s hearing held on April 22, 1980, and, lacking the transcript, finds no error and will not disturb the bankruptcy court’s ruling.
 

 In the preceding order, the bankruptcy court also fines Peoples National Utility Company $1,000.00 for its participation in the filing of the Request for Production in Adversary G. The fine was imposed after the bankruptcy court had informed Peoples in a Memorandum Opinion filed in Adversary G on March 4, 1980, that it was not a proper party to the bankruptcy proceeding. After an examination of the applicable law, the Court concurs in the bankruptcy court’s finding that Peoples was not a proper party in the ancillary adversary proceeding. Further, the record reflects that at no time did
 
 *469
 
 Peoples move to intervene in the adversary proceeding pursuant to Bankruptcy Rule 724.11 U.S.C. Thus, insofar as Peoples was not a proper party to the adversary proceeding, it cannot be a proper party to debtor-appellant’s appeal of Adversary G, and may not seek a review of the fine in this appeal. Neither may debtor-appellant Gulf Water appeal the fine since it was not harmed by the fine and has no “personal stake in the outcome.”
 
 See Baker v. Carr,
 
 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663,
 
 on remand,
 
 206 F.Supp. 341 (M.D.Tenn.1962).
 

 Finally, debtor-appellant assigns error to the bankruptcy court’s dismissal of its Chapter XI petition. In addressing this issue, the Court is mindful that where the correctness of an administrative act or order is being reviewed, courts, recognizing that the supervision of a bankrupt’s estate is left to the sound discretion of the bankruptcy judge, will not interfere with the bankruptcy court’s administration unless there is an abuse of discretion. 2A Collier on Bankruptcy, ¶ 39.16 at 1485 (14th ed. 1978). Further, a bankruptcy court’s findings of fact are binding on the district court unless shown to be “clearly erroneous.” Bankruptcy Rule 810, 11 U.S.C.;
 
 Matter of Boydston,
 
 520 F.2d 1098, 1100 (5th Cir. 1975).
 

 It is also the responsibility of the appellant to insure that an adequate record is transmitted on appeal. Bankruptcy Rule 806.11 U.S.C.; Rule 10(b)(2), F.R.A.P. The appellant here has failed to make satisfactory arrangements for the inclusion of relevant transcripts. Without these transcripts, the Court is unable to find that the bankruptcy court’s findings of fact are erroneous.
 
 United States v. Bob Lawrence Realty, Inc.,
 
 474 F.2d 115, 126 (5th Cir.),
 
 cert. denied,
 
 414 U.S. 826, 94 S.Ct. 131, 38 L.Ed.2d 59 (1973).
 

 Notwithstanding appellant’s failure to provide the requisite transcripts, the Court further accepts the bankruptcy court’s statement that debtor-appellant admitted that no plan of arrangement could be confirmed unless and until the present rates are set aside and new, higher rates are established. (Bankruptcy Court’s Memorandum Opinion filed in Bankruptcy No. HB-79-95 Adversary B on January 31, 1980, at 8). Thus, in view of the nature of the ultimate relief sought by the debtor-appellant, and the bankruptcy court’s proper abstention in Adversary G, the Court concludes that the possibility of debtor’s consummation of any plan of arrangement was rendered remote, if not actually precluded.
 
 See In re Maltese,
 
 195 F.Supp. 358 (D.N.J.1961).
 

 For the reasons stated above, the Court hereby ORDERS:
 

 The bankruptcy court’s Orders of Dismissal in Bankruptcy Nos. HB 79 95 and HB 79 95 Adversary G are AFFIRMED.
 

 Costs shall be taxed against the appellants.
 

 [1]
 

 . In HB-79-95 Adversary G, the bankruptcy court found that Peoples National Utility Company was not a proper party in the bankruptcy proceeding. (Bankruptcy Court’s Memorandum Opinion on Request for Injunctions filed in HB-79-95 Adversary G on March 4, 1980, at 6, 7, 10 & 11). Subsequent to this determination by the bankruptcy court, Peoples joined with Gulf Water in filing a Request for Production of Documents in the same adversary proceeding. As a result, the bankruptcy court fined Peoples $1,000.00 for its continued improper participation in the bankruptcy proceeding. (Bankruptcy Court’s Order filed in HB -79 95 Adversary G on May 21, 1980).
 

 **
 

 The Public Utility Commission of the State of Texas is the state agency charged with the jurisdiction and responsibility over entities offering utility services within the state of Texas. Among the duties of the PUC are rate regulation and quality of service.
 

 [2]
 

 . The judgment nihil dicit in Cause No. 276,449 was affirmed by the state court of civil appeals on May 14, 1980.
 

 [3]
 

 . The record reflects that the district court had, in fact, scheduled hearings in Cause Nos. 276,-449 and 276,982 for February 15, 1979, one day before Gulf Water filed its voluntary petition for bankruptcy.