**Lorenzo W. COATS, Plaintiff–Appellant,**

v.

**Percy PIERRE, et al.,
Defendants–Appellees.**

No. 88–2308.

United States Court of Appeals,
Fifth Circuit.

Rehearing Denied Feb. 2, 1990.

Lorenzo W. Coats, College Park, Ga., pro se.

Ester Hajdar, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before CLARK, Chief Judge, THORNBERRY, and GEE, Circuit Judges:

GEE, Circuit Judge:

In August of 1978, the appellant, Dr. Lorenzo Coats, was hired by Prairie View A & M University to teach biology to students not majoring in science. He was employed from September 1978 until May 1985 pursuant to annual contracts. In the fall of 1983, the Biology Departmental Promotion and Tenure Advisory Committee reviewed Dr. Coats's performance to determine whether tenure should be granted him, ultimately recommending against it. Their recommendation was then forwarded, in turn, first to Dr. Jewel Berry, the head of the Biology Department, then to Dr. Edward Martin, the Dean of the College of Arts and Sciences, to Dr. Thomas Cleaver, the Executive Vice President for Academic Affairs, and finally, to Dr. Percy Pierre, the President of Prairie View. Each of

these reviewers affirmed the Committee's recommendation that tenure be denied. In accordance with Texas A & M University policy regarding faculty members denied tenure in their sixth year of service, Dr. Coats was given a terminal contract for the 1984–85 school year.

Dr. Coats, acting pro se, filed suit under 42 U.S.C. § 1983 against the Board of Regents of Texas A & M University System, and various Prairie View faculty members and administrators. Dr. Coats alleged in his complaint that the defendants' actions violated his rights to Due Process and Equal Protection and that tenure was denied him in retaliation for his exercising First Amendment rights of free speech.

Dr. Coats tried his own case, at the close of which the district judge granted the defendants' motion for a directed verdict. In a later hearing, the district judge imposed sanctions and attorney's fees on Dr. Coats in the amount of $20,000. On appeal, Dr. Coats challenges both the grant of directed verdict and the imposition of sanctions.

## I. Record on Appeal

Rule 10(b)(2) of the Federal Rules of Appellate Procedure requires that if a finding or conclusion is challenged as "contrary to the evidence," the appellant must include in the record on appeal "all evidence relevant to such finding or conclusion." Dr. Coats has failed to include in the record on appeal a transcript of the district court's decision to grant the directed verdict, with its recitation of reasons for doing so, along with the transcripts of the testimony of several witnesses, including that of Dr. Coats. In addition, Dr. Coats withdrew all of his exhibits after trial, rendering them unavailable to us. The appellees maintain that the incomplete record in this case precludes our review.

Although a judge is not required by the Federal Rules of Civil Procedure to recite his reasons for granting a directed verdict, we have "often stated that a reasoned statement is helpful not only to counsel but also to the appellate court. In all but the simplest case, such a statement

usually proves not only helpful, but essential." *Jot–Em–Down Store Inc. v. Cotter & Co.*, 651 F.2d 245, 247 (5th Cir.1981). The failure of an appellant to provide the statement is a proper ground for the dismissal of the appeal. *See, e.g., Thomas v. Computax Corp.*, 631 F.2d 139, 143 (9th Cir.1980). Dismissal is not, however, mandatory. *See* Fed.R.App.P. 3(a). In *Gulf Water Benefaction Co. v. Public Utility Com'n*, 674 F.2d 462, 466 (5th Cir.1982), we rejected an appellee's motion to dismiss an appeal for the failure to provide a transcript, reasoning:

> it is clear that the dismissal of an appeal for failure to provide a complete transcript of the record on appeal is within the discretion of the court. The court is also mindful that "the drastic sanction of dismissal should not be imposed for minor infractions of the rules." Thus, the Court, having considered the pleadings before it and having weighed the relative hardship and prejudice to the parties, together with an examination of the applicable law, concludes, in its discretion, that it should not dismiss the appeal but should decide those issues which can be reached on the record before it.

*Id.* at 466 (citations omitted). Without Dr. Coats's testimony and his trial exhibits, the record in the present case offers little evidence supporting Dr. Coats's claims. Although we choose not to dismiss the appeal, the scope of our review is necessarily limited to reviewing the available transcripts and determining whether the evidence contained in them is sufficient to raise a jury question. *See Boeing v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc). We conclude that it is not.

## II. Directed Verdict

### A. *Due Process*

Dr. Coats alleges, as part of his § 1983 claim, that he was deprived of procedural due process when he was demoted and terminated. In order to show an entitlement to due process, a plaintiff must prove that he has a protectable property interest in his continued employment.

*Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A university professor has a protectable property interest in his position if tenure has been granted or if he can demonstrate a reasonable expectation of continued employment. *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.1970). Prior to 1983, the year Dr. Coats was reviewed for tenure, Prairie View had no formal tenure review process. The Policies and Procedures of the Texas A & M system require that a tenure-track faculty member either be tenured or terminated by the end of that member's seventh year.

Dr. Coats contends that when he arrived at Prairie View he was credited with three years toward tenure because of his past teaching experience, and as a result, that 1982 was his seventh year; as he was not terminated at the close of 1982, he maintains that he received de facto tenure.

■ In support of his position that he was granted three years credit toward tenure, Dr. Coats relies exclusively upon a tenure record of the University which he contends shows that in 1982 he had seven years counted toward tenure. This document, like all of Dr. Coats's trial exhibits, is not in the record before us. A copy of the document has been provided in Dr. Coats's record excerpts, but as we have no way of knowing whether the document was admitted into evidence or was considered by the court in directing its verdict, we may not consider it in our review.[1]

### B. *Retaliatory Termination*

■ Dr. Coats alleges that his termination was retaliatory in violation of his first amendment right to free speech. Even if a teacher has no protectable property interest in his continued employment sufficient to invoke the protections of the due process clause, he "may neither be dismissed or not be rehired for constitutionally impermissible reasons such as race,

religion, or the assertion of rights guaranteed by law or the Constitution." *Ferguson,* 430 F.2d at 857; *see Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). In order to show that a plaintiff's first amendment right to free speech has been violated by wrongful termination, he must show 1) that his conduct was constitutionally protected, and 2) that his conduct was a substantial or motivating factor in the decision not to rehire. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. When a plaintiff has met this burden, the defendant must show by a preponderance of the evidence that the same decision would have been reached absent such motivation. *Id.*

■ In order for speech to merit constitutional protection, it must relate to a matter of legitimate public concern. *Day v. South Park Independent School Dist.,* 768 F.2d 696 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); *see Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the record as a whole." *Day,* 768 F.2d at 700 (quoting *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690).

■ Dr. Coats maintains that he was terminated in part because of assertions by him that professors at Prairie View showed favoritism in grading toward athletes and pre-med students and exchanged grades for sex. Indiscreet or not, such allegations do go beyond individual personal disputes and grievances to touch upon matters of public concern. Although these comments meet the first requirement of *Mt. Healthy,* the second requirement, that the speech be a substantial or motivating factor in the decision not to rehire, is not met in this case. To establish that his speech was

---

1. Even considered as evidence, the document is ambiguous. Although in the top portion of the document, a number seven, partially whited-out, appears next to "Total Years Counted Toward Tenure," the bottom half clearly shows that as of 1982 only four years had been counted to-

ward tenure. Absent testimony explaining the nature of the document and the reason for this apparent discrepancy, the document, standing alone, does not constitute substantial evidence that Dr. Coats had received de facto tenure.

responsible for the committee's negative recommendation, Dr. Coats relied at trial on the testimony of one Linda Jones. Ms. Jones's testimony, which does appear in the record, was that she attended a "civic organization" meeting in which Dr. Coats made the allegations of favoritism and sexual impropriety at Prairie View and that she related the allegations to the head of the Biology Department, Dr. Jewel Berry, now deceased.

The recommendation not to rehire was made by a committee, of which Dr. Berry was not a member. None of the members of this committee whose testimony appears in the record testified that he had any knowledge of these remarks by Dr. Coats. Although Dr. Berry affirmed the recommendation of the committee, there was no evidence produced at trial that his decision to affirm the recommendation was influenced by Dr. Coats's charges. There is likewise no evidence that Dr. Cleaver, Dr. Martin, or Dr. Pierre, who had also affirmed the recommendation, had any knowledge of the charges made by Dr. Coats. Because the record before us contains no substantial evidence to show that the protected speech of Dr. Coats was a substantial or motivating factor in his being denied tenure, we cannot conclude that the district court erred in granting a directed verdict as to Dr. Coats's claim of retaliatory dismissal.

## C. *Equal Protection*

Dr. Coats alleges that he was treated differently from light skinned blacks and whites. As our review of the record reveals no evidence of the race or skin color of the other candidates granted tenure after the formal review process was adopted, this attempted class-based argument fails. Dr. Coats also alleges that the decision to deny him tenure was not based on any rational reasons. Under a rational-basis analysis, a tenure decision will be upheld so long as the relation between criteria applied and a stated purpose is "at

least debatable." *Levi v. University of Texas at San Antonio*, 840 F.2d 277 (5th Cir.1988). "The test does not permit a judge or jury simply to second-guess University officials's academic judgment concerning a tenure decision." *Id.* In the present case, the committee recommendation noted the following reasons supporting denial of tenure: failing to appear for classes while not on official leave, threatening his wife's life (!) in front of her class while she was teaching,[2] a failure to exhibit significant research, creative activities or other scholarly efforts within his academic discipline, a failure to attend departmental activities, and a demonstrated unwillingness to become involved in student departmental affairs. As the reasons given for denying Dr. Coats tenure are not impermissible ones and do bear at least some relation to his effectiveness as a faculty member at Prairie View, Dr. Coats has failed to make a case showing that he was denied equal protection.

## III. Sanctions and Attorney's Fees.

Following trial, the district court awarded the appellees sanctions and attorney's fees in the amount of $20,000 under Fed.R. Civ.Pro. 11 and 42 U.S.C. § 1988.

42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." The standard under which fees are awarded differs if a defendant rather than a plaintiff prevails. *White v. South Park Independent School District*, 693 F.2d 1163 (5th Cir.1982). A prevailing defendant should be awarded attorneys' fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Id.* (adopting the Title VII standard expressed in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978)). The court must make specific findings to support its conclusions. *Id.*

---

**2.** Dr. Coats's wife was also employed as a faculty member at Prairie View. One witness at trial testified that Dr. Coats walked into his wife's classroom, pointed his finger at his wife, and

said, "Juanita Brooks, if you come near my house again, I'll shoot your God damn brains out."

Here, the district court made only one specific finding to support its conclusion that Dr. Coats's suit was frivolous, stating, "[y]our allegations regarding sexual misconduct regarding grades are totally unsupported by any of the people you called from the university." In the record before us, Dr. Coats had asked several witnesses questions regarding sexual misconduct, to which relevancy objections were properly sustained. Having denied Dr. Coats the opportunity to bring out his purported evidence of sexual misconduct at Prairie View, however, the district court could not properly impose attorney's fees upon him on this ground under Section 1988.

The district judge also based the imposition of attorney's fees upon Fed.R.Civ.Pro. 11. Rule 11 declares that the signature of a party on a pleading is a certificate by the signor

> that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The Advisory Committee Notes indicate that the rule builds upon and expands the equitable doctrine permitting a court to award expenses, including attorney's fees, to a party whose opponent acts in bad faith in instituting or conducting litigation. Although the district court failed to make specific findings as to its conclusion that Dr. Coats's lawsuit was groundless, it was specific as to a Rule 11 violation, stating:

> I think the language you used in your motion for sanctions and a new trial—or summary judgment on page twenty-two against counsel personally are worse than outrageous. They are unconscionable. I would be perfectly within my rights to hold you in contempt. I will not do so, however I will simply assess the sanctions.

The language referred to above—and which was indeed outrageous—was contained in a post-trial motion filed by Dr. Coats which stated that opposing counsel "acted like a little nasty dumb female Mexican pig in heat," and that she was "nothing but garbage." Abusive language toward opposing counsel has no place in documents filed with our courts; the filing of a document containing such language is one form of harassment prohibited by Rule 11.

Although the granting of sanctions under Rule 11 is clearly justified in the present case, we are somewhat troubled that such a large award was assessed against Dr. Coats, a pro se litigant. Although the record on appeal is incomplete, it does contain copies of Dr. Coats's employment contracts for his years at Prairie View, which disclose that his annual income from teaching over the seven year period ranged between $22,200–28,657. Under such circumstances we conclude that a $20,000 sanction is excessive. We now reduce the amount to $1,800. Although we feel compelled to reduce the amount of the sanctions in the present case, we do not intend to set a limit on the amount a pro se litigant may be fined, nor do we imply that the amount of a litigant's income should be determinative in the assessment of sanctions. We have simply determined that, given the conduct involved and Dr. Coats's economic circumstances, $1,800 is sufficient.

The order of the district court granting the defendants' motion for a directed verdict is AFFIRMED. We REMAND the case with instructions that the award of sanctions and attorney's fees be reduced from $20,000 to $1,800.