Frances V. REDD

v.

**FISHER CONTROLS.**

Civ. No. A–91–CA–691.

United States District Court,
W.D. Texas,
Austin Division.

Jan. 21, 1993.

William S. Babcock, Jr., Austin, TX, for plaintiff.

Frances V. Redd, pro se.

Christopher A. Knepp, Ann A. Price, Hughes & Luce, Austin, TX, for defendant.

## ORDER

SPARKS, District Judge.

Before the Court is Defendant's Motion for Sanctions, filed August 21, 1992; Supplement to Defendant's Motion for Sanctions, filed December 8, 1992; and Defendant's Motion for Award of Attorney's Fees, filed December 14, 1992. Having considered the Motions, Plaintiff's responses thereto, and the complete file in this cause, as well as having listened to the arguments of counsel at the December 2, 1992 sanctions hearing, the Court finds Defendant's Motion for Sanctions meritorious and orders Plaintiff's counsel, William S. Babcock, Jr. to pay $2700.00 in sanctions, but declines to grant Defendant's Motion for Award of Attorney's Fees under Title VII.

## I. FACTS

Plaintiff filed this lawsuit, alleging employment discrimination, on September 4, 1991, at which time she represented herself pro se. On or about April 22, 1992, Plaintiff secured counsel, William S. Babcock, Jr., who was ordered attorney of record on May 18, 1992. Since that time, Mr. Babcock has filed numerous pleadings and motions, many of which violate the Local Rules for the Western District of Texas by being single-spaced and/or in excess of the twenty-page limit and most of which have lacked merit.

After exercising restraint and patience in dealing with Plaintiff and her counsel, Defendant's counsel filed a motion to strike pleadings and for sanctions on June 10, 1992. This Court granted the motion to strike but declined to impose sanctions at that time. Defendant's counsel again filed a motion for sanctions on August 21, 1992, based primarily on the contents, or lack thereof, of three documents filed by Mr. Babcock: (1) Plaintiff's Motion for Summary Judgment, filed August 4, 1992; (2) Plaintiff's Response to Defendant's Motion to Strike Supplemental Pleadings and Plaintiff's Motion for Sanctions & for Leave of Court to Amend Pleadings, filed July 31, 1992; and (3) Plaintiff's Motion for Extension of Time to Complete Discovery & Draft Pre–Trial Order; Motion to Compel Discovery Requests, & Settlement Conference, filed July 31, 1992.

Having granted Fisher Control's motions for summary judgment on the same date, the Court entered judgment in favor of Defendant Fisher Controls on all counts on November 24, 1992. On December 2, 1992, the Court held a sanctions hearing at which both Plaintiff's and Defendant's counsel appeared and made argument and at which this Court orally granted Defendant's Motion for Sanctions.

## II. SANCTIONS

### A. Rule 11

The Court imposes these sanctions on Plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure. Rule 11 states, in part:

> The signature of an attorney or party constitutes certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief *formed after reasonable inquiry* it is *well grounded in fact* and is *warranted by existing law* or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing ..., including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (emphasis added).

 Although the goals of Rule 11 sanctions include deterrence, punishment, and compensation, "the central purpose of Rule 11 is to deter baseless filings in District Court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *see also Willy v. Coastal Corp.*, 915 F.2d 965, 968 (5th Cir.1990), *aff'd*, —— U.S. ——, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) (citing *Thomas v. Capital Security Serv., Inc.*, 836 F.2d 866, 879 (5th Cir.1988 (en banc)). As such, the standard set forth in Rule 11 is an objective one, and a court need not find bad faith in order to sanction an attorney or party. *See Chambers v. NASCO, Inc.*, —— U.S. ——, ——, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991) (citing *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 546, 111 S.Ct. 922, 932, 112 L.Ed.2d 1140 (1991)).

### B. Violations of Rule 11

There is no question Plaintiff's attorney violated Rule 11 repeatedly. In fact, were this Court to list each and every offending passage in documents filed by Mr. Babcock, this order would approach the length of some of Mr. Babcock's filings. As the Court announced at the sanctions hearing, it will not consider "Plaintiff's Motion for Leave to Make the Following Responses & Motions; Plaintiff's Supplemental Responses to 'No Injury' Summary Judgment Motion & to Responses to Plaintiff's Motions for Deposition, Hearing & Extension; Plaintiff's Response to Defendant's Attack on 'Supplement to Status Conference'; Plaintiff's Counsel's Motion for Determination of Right to Withdraw Without Sanctions; or Plaintiff's Motion to Recuse &/or Change Venue," filed November 20, 1992. Nor will it directly consider Plaintiff's Response to Defendant's 4th[1] Motion for Sanctions, Plaintiff's Motion to Withdraw Motions & Plaintiff's Motion for Sanctions, filed August 31, 1992, or Plaintiff's Supplemental Response to Defendant's Sanctions Motions & Request for Extension of Time to Answer, filed December 10, 1992.

 While each of the above listed documents contains statements sanctionable under Rule 11, the Court has chosen to limit its review to those documents primarily attacked in Defendant's Motion for Sanctions. Such limited review will not prejudice Defendant as the Court will not order Plaintiff's counsel to pay all of Defendant's attorneys'

---

1. Plaintiff's counsel has adamantly maintained that Defendant filed at least four motions for sanctions. In fact, however, Defendant filed only two motions for sanctions. Thus, this response should be a response to Defendant's Second, not Fourth, Motion for Sanctions.

fees and costs incurred responding to the three main documents (listed above), much less all of the attorneys fees and costs incurred responding to every document containing Rule 11 violations.

### 1. Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment, filed August 4, 1992, is slightly over one page long, has no accompanying brief, cites no legal authority, and has no attached affidavits or deposition excerpts. It requests summary judgment on causes of action which are not in the pleadings (e.g., bad faith, wrongful retaliatory termination, and breach of contract), and which were stricken by this Court on June 29, 1992. The motion is entirely baseless and Plaintiff's counsel obviously did not make a reasonable inquiry into either the facts or law.

### 2. Plaintiff's Response to Defendant's Motion to Strike Supplemental Pleadings and Plaintiff's Motion for Sanctions & For Leave of Court to Amend Pleadings ("Plaintiff's Response")

As Defendant put it, Plaintiff's Response, filed July 31, 1992, falls "within the category of 'confusing, misleading and ill-founded pleadings' which the Fifth Circuit found sanctionable in *Willy*." *Defendant's Motion for Sanctions* (citing *Willy*, 915 F.2d at 968). This response to Defendant's Motion to Strike was filed over a month after this Court granted Defendant's Motion to Strike. Obviously, if Plaintiff's counsel had made a reasonable inquiry into the facts or law, he would have realized his response was long overdue and moot. However, as it is also ostensibly a motion to amend, the Court does not find that Plaintiff's counsel filed the motion late in order to harass Defendant or its counsel.

Turning to that portion of the motion in which Plaintiff's counsel seeks sanctions against Defendant, the Court found several statements by Plaintiff's counsel abusive, offensive to Defendant's counsel and this

Court, and made without reasonable inquiry as to their truth. For instance, Plaintiff's counsel stated, "Defendant's resources are so plentiful, they carelessly waste tens of thousands of dollars on Defense firms trying to *cheat* Plaintiff's [sic] out of their just compensation." *Plaintiff's Response*, at 11 (emphasis added). He further stated, "Fisher and its defense counsel realize that they are sizeable *judicial*, political and business forces who can find a way to obtain nearly whatever they desire by their political clout, superior litigation resources, superior financial resources and intimidation tactics," *id.* (emphasis added), and "Fisher and its defense counsel have resorted to Hitlerian rhetorical ploy called the 'Big Lie' by which they pre-emptively accuse the opposition of using the same *fraudulent* tactics they are using...." *Id.* (emphasis added).

In response to this Court's inquiry on December 2, 1992, as to what reasonable inquiry he made before making the above allegations, Mr. Babcock replied that his client Ms. Redd had told him that Fisher Controls has large amounts of money to cheat plaintiffs like her and that everyone knows Defendant's counsel has a lot of political clout. When pressed, Mr. Babcock further stated that he knew state judges are given contributions by big law firms and so, because he felt the Court was not justly interpreting the law, he was led to wonder if political consideration played a role.[2] When pressed even further, Mr. Babcock stated that if he did more investigation, he believed it would show what his client told him to be true.

■ The time for such investigation is before, not after, filing documents containing such accusations. The above statements were made in clear violation of Rule 11.

As for a reasonable legal inquiry, Plaintiff's counsel as much as admitted in the motion, under the heading "SUPPORTING LAW," that he had not made a reasonable inquiry into the law when he stated, "[i]n the interest of time, Plaintiff has filed this argument in *as soon as possible* without including

---

**2.** Mr. Babcock did not attempt to explain what relevance the alleged conduct of state judges would have in a federal case.

citation to supporting law.[3] However Plaintiff has researched these points, knows the law supporting them, and will add footnotes referencing such law as soon as possible." *Id.* at 12. It is difficult, if not impossible, for this Court to believe Plaintiff's counsel when he states that he has researched the law included in this motion, and only omitted legal citations in the interest of time. Plaintiff's counsel had the same amount of time to respond to Defendant's motion to strike as any other litigant in the Western District of Texas and yet failed to even meet that time limit, filing this response over a month after Defendant's motion to strike was granted. For that matter, even if Plaintiff's counsel had been pressed for time, that is no excuse for failing to make reasonable inquiry into the law or leaving out citations to legal authority.

Plaintiff's Response to Defendant's Motion to Strike Supplemental Pleadings and Plaintiff's Motion for Sanctions & For Leave of Court to Amend Pleadings are in blatant violation of Rule 11.

3. *Plaintiff's Motion for Extension of Time to Complete Discovery & Draft Pre-Trial Order; Motion to Compel Discovery Requests, & Settlement Conference ("Plaintiff's Motion for Extension")*

In Plaintiff's Motion for Extension, Plaintiff's counsel continues his tirade against the Defendant and its counsel, making particularly disparaging remarks about Defendant's counsel. Amongst other things, Babcock states "Fisher's defense counsel has a *history of running up large fees,* and *refusing settlement even when it was in Defendant's best interest.* In the past, Defendant has lost huge judgements [sic] and paid gross legal fees on cases litigated for years that should have been settled early on. This fact indicates *Defense counsel may tend to ill-advise Defendant* of its true interest in settling."

*Plaintiff's Motion for Extension,* para. 9 (emphasis added). Contrary to Mr. Babcock's allegations, neither Hughes & Luce or the individual members of that firm now representing Defendant have ever represented Defendant in the past and, thus, could not have run up large fees or unreasonably refused settlement when settlement would have been in Defendant's best interest. Given the absolute falseness of Mr. Babcock's above statements, there is no question he performed no reasonable inquiry to ascertain the truth before signing his name to the document in which the statements appeared.

In an attempt to dig himself out of the hole he put himself in with the above statements, Plaintiff's counsel attempted to withdraw the motion containing those statements. *See Plaintiff's Response to Defendant's 4th Motion for Sanctions, Plaintiff's Motion to Withdraw Motions & Plaintiff's Motion for Sanctions* (August 31, 1992). In support of his right to do so and avoid sanctions, he stated "[e]xtensive case law [although he cites none] holds that a party has the right to withdraw sanctionable pleadings before being subject to sanctions, so long as no injury has occurred." *Id.* at para. 3.

Without deciding the merit of Mr. Babcock's unsupported argument for withdrawal, this Court finds Defendant's counsel was injured by the statements as soon as they were filed and made a part of this file's public record. As the Fifth Circuit Court of Appeals has previously held, "[a]busive language towards opposing counsel has no place in documents filed with our courts; the filing of a document containing such language is one form of harassment prohibited by Rule 11." *Coats v. Pierre,* 890 F.2d 728, 734 (5th Cir.1989), *cert. denied,* 498 U.S. 821, 111 S.Ct. 70, 112 L.Ed.2d 44 (1990) (in a motion for sanctions, pro se plaintiff referred to opposing counsel as a "little nasty dumb female Mexican pig in heat"). Although Mr.

---

**3.** In fact, Plaintiff's counsel actually did cite to five legal authorities in his response and motions. One of those was to *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a 1966 Supreme Court case which Mr. Babcock cites to support his [novel] argument that this Court can exercise jurisdiction over state law claims. Three were to cases cited by Defendant in its motion to strike. The last authority Mr. Babcock cited was an article in a 1977 St. Mary's Law Journal, which he cites for the authority that a motion for leave to amend is unnecessary as a district court will grant leave anyway so long as the motion is timely and not frivolous.

Babcock's characterizations of and accusations against Defendant's counsel are not as banal or outrageous as those cited in *Coats v. Pierre*, to reputable lawyers such as Defendant's counsel the statements made by Mr. Babcock may be equally offensive and damaging. Lawyers cannot, as Mr. Babcock wishes, be allowed to make such abusive remarks against opposing counsel and expect to be able to say "so sorry, I didn't really mean it" and not face sanctions.

In defense of himself, Mr. Babcock again replied to this Court that he was merely repeating what his client had told him to be true of Defendant's counsel and that he was sure it would not take long to investigate and support his allegations. In his response to Defendant's *Motion for Sanctions*, Mr. Babcock similarly stated "even a novice attorney or law student would be remiss not to suspect that those remarks were true, i.e. that Defense counsel exploits questionable tactics for questionable reasons." *Response*, at 4, para. 7. "Plaintiff can prove good cause to allege them, and can *almost* just as *surely prove* they are true *with a little discovery.*" *Id.* at 5, para. 7 (emphasis added).

Again, not only is it impossible for Mr. Babcock to prove most, if not all, of his allegations against Defendant's counsel, but the time, required by Rule 11, for conducting such an inquiry is *before*, not after, including them in documents signed and filed with the Court.

### C. Sanctions Assessed

▬ Under Rule 11, this Court may impose an "appropriate sanction," including attorney's fees incurred as a result of the sanctionable conduct. Fed.R.Civ.P. 11. However, a court need not require a sanctioned attorney or party to pay the entire amount of the opposing party's costs and attorneys' fees incurred as a result of the Rule 11 conduct. *See Coats v. Pierre*, 890 F.2d 728, 734 (5th Cir.1989). Rather, a court may take into account the nature of the violations and the amount needed to deter the offending party or attorney, including his or her financial resources. *See id.; see also Cooter*, 496 U.S. at 393, 110 S.Ct. at 2454.

At the time of the December 2, 1992 sanctions hearing, Defendant sought a total of $4,349.50 in attorneys' fees for the time spent responding to, or otherwise dealing with, Plaintiff's Response to Defendant's Motion to Strike; Plaintiff's Motion for Summary Judgment; Plaintiff's Supplemental Report to Status Conference; and Plaintiff's Motion to Withdraw and for the time spent preparing the motion for sanctions.[4] In its Supplement to Defendant's Motion for Sanctions, Defendant further requested an additional $665.00 for the time spent at the December 2, 1992, sanctions hearing and for the time spent preparing the Supplement and attached affidavit.[5] Thus, Defendant seeks, as sanctions, a total of $5014.50.

As indicated earlier in this opinion, the Court did not consider Plaintiff's Supplemental Report to Status Conference or Plaintiff's Counsel's Motion to Withdraw as these documents were not a part of Defendant's original motion for sanctions and as the Court is unwilling to impose such a large fee on Mr. Babcock for reasons enumerated below. The Court will also not allow Defendant to recover the cost incurred preparing the Supplement to Defendant's Motion for Sanctions as, except for the attorneys' fees attributable to attending the sanctions hearing, it is redundant and Plaintiff's pleadings speak for themselves. Subtracting the fee amounts for the excluded work described above, the attorneys' fees sought by Defendant are reduced to $4104.50.

While the time spent by Defendant's attorneys was not unreasonable and the hourly rates consistent with those requested by attorneys of similar caliber in Austin, Texas, the Court nonetheless declines to award the

---

**4.** This amount includes 4.0 hours worked by Christopher Knepp at $200.00 per hour and 3.5 hours at $210.00 per hour; 1.0 hour worked by Grace Renbarger at $165.00 per hour; and 22.7 hours worked by Ann Abrams Price at $85.00 per hour and 7.2 hours at $100.00 per hour.

**5.** This amount includes 1.5 hours spent by Christopher Knepp at the sanctions hearing at $210.00 per hour; 1.5 hours spent by Ann Abrams Price at the sanctions hearing at $100.00 per hour; and 2.0 hours spent by Ms. Price preparing the Supplement to Defendant's Motion for Sanctions and attached affidavit.

entire $4104.50 in attorneys' fees. Mr. Babcock's statements were totally irresponsible and constituted flagrant violations of Rule 11. Nonetheless, Mr. Babcock had only been a licensed attorney for approximately one year when he took on Plaintiff's case, and, as stated repeatedly by Mr. Babcock, he is a solo practitioner with little revenue. These representations, unlike many made by Mr. Babcock, are supported by the attachments to Plaintiff's Supplemental Response to Defendant's Sanctions Motions & Request for Extension of Time to Answer, filed December 10, 1992. Although the motion for extension of time was denied, the Court did read through Mr. Babcock's otherwise irrelevant attachments, which included, amongst other things, a copy of an application by Mr. Babcock for a loan and a copy of his resume. From these documents, it is clear that Mr. Babcock's law practice is not thriving and his income severely limited.

■ The Court has taken these facts into consideration when concluding that a sanctions award of $2700.00, almost two-thirds of the $4104.50 calculated by the Court above, will suffice to adequately deter Mr. Babcock from similar filings in the future, punish Mr. Babcock, and compensate Defendant and its counsel. In addition, the Court recommends Mr. Babcock send a letter of apology to Defendant's counsel.

## III. DISCRETIONARY ATTORNEYS' FEES UNDER TITLE VII

■ In addition to sanctions, Defendant requests attorneys' fees [6] as a prevailing party under Title VII. As correctly stated by Defendant, a court may, in its discretion, award attorneys' fees to the prevailing defendant in a Title VII case if it finds "plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Defendant's Motion for Award of Attorney's Fees*, at 1 (Dec. 14, 1992) (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). Although each of Defendant's motions for summary judgment was granted, this Court nonetheless does not find that Plaintiff's action was so frivolous, unreasonable, or without foundation as to warrant the granting of attorneys' fees under Title VII. *See* 42 U.S.C. § 2000e-5(k) (West Supp.1992).

Plaintiff filed this lawsuit on her own and represented herself pro se for the first seven and a half months of the case's pendency. Without excusing Mr. Babcock for his violations of Rule 11, the Court does recognize the difficulty Mr. Babcock faced accepting a case from a pro se litigant midstream. Given these circumstances, the Court declines to exercise its discretion under Title VII to order Plaintiff or her counsel to pay Defendant's attorneys' fees beyond those assessed against Mr. Babcock as sanctions.

In addition, despite the fact Plaintiff filed untimely, she may have honestly believed she had filed in time and her charge was lost. Thus, the Court is unwilling to find Plaintiff's action frivolous on that ground. Similarly, Plaintiff may have actually believed she had no prior felony convictions prior to seeking employment with Defendant Fisher Controls, causing her to not inform her attorney of the conviction or realize its impact on her suit. Finally, the effect of after-acquired evidence in a Title VII discriminatory termination case is an issue of first impression in the Fifth Circuit; thus, although this Court is convinced its holding is correct, Plaintiff and her counsel were entitled to disagree and argue otherwise. As for her cause of action for failure to rehire, it was merely one of several causes of action, and even if Plaintiff had chosen not to include it, she presumably would still have filed this suit.

Accordingly, this Court does not find Plaintiff liable for Defendant's attorney's fees under 42 U.S.C. § 2000e-5(k).

## IV. CONCLUSION

In accordance with the above opinion, the Court enters the following orders:

IT IS ORDERED that Defendant's Motion for Sanctions is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's counsel, William S. Babcock, Jr. pay

---

6. Defendant does not seek all of its attorneys' fees incurred defending this action, but rather only those attributable to the work of lead counsel, Christopher Knepp.

attorneys' fees, incurred as a result of Mr. Babcock's Rule 11 violations, in the amount of $2700.00 to Defendant.

IT IS FINALLY ORDERED that Defendant's Motion for Award of Attorney's Fees is DENIED.