Tom FLAHERTY, Controller of the City of Pittsburgh, Plaintiff,

v.

John R. TORQUATO, Jr., Judy Ellis, Allen R. Stoneman, David I. Herbert, Robert Rade Stone and Ronald C. Schmeiser, Defendants.

Civ. A. No. 85–1525.

United States District Court, W.D. Pennsylvania.

Nov. 26, 1985.

Kevin C. Forsythe, Pittsburgh, Pa., for plaintiff.

Harold Gondelman, Bernard D. Marcus, Frederick W. Thieman, Pittsburgh, Pa., James R. DiFrancesco, Johnstown, Pa., Alan R. Stoneman, Orange, Cal., for defendants.

## MEMORANDUM OPINION

ZIEGLER, District Judge.

The Controller of the City of Pittsburgh, Pennsylvania, filed a civil action for money damages predicated on the Racketeer Influenced and Corrupt Organizations Act of 1970. 18 U.S.C. §§ 1964(a) and (c). Plaintiff alleges that defendants participated in a scheme to obtain government contracts through the corruption of public officials, and that the controller unwittingly approved these illegal contracts for the City of Pittsburgh ("City") in the sum of $150,-000. Defendants have filed motions to dismiss under Fed.R.Civ.P. 12(b) contending that plaintiff lacks standing. After reviewing the complaint and exhibits thereto, we find that plaintiff has suffered no injury, real or threatened, for which relief can be granted. The complaint will be dismissed for want of jurisdiction.

### I. *History of Case*

The instant controversy arises following a number of successful prosecutions involving Computer Technology Associates, Inc. (CTA), and others, in the United States District Court for the Middle District of Pennsylvania. According to the complaint, defendants, Torquato, Ellis and Stoneman, doing business in California as CTA, Ltd., induced Robert Stone, a member of Council

of the City of Pittsburgh, to advocate the company for a contract to recover Social Security overpayments made by the City and its employees. Defendant, Ronald Schmeiser, Finance Director of the City, was named for his participation in the contract. The complaint alleges that plaintiff, as controller, signed the CTA contract in good faith when presented by Schmeiser.

Plaintiff alleges that the act of signing the unlawful contract injured his "property and business" in several respects. First, the controller's office spent time and resources to conduct an audit of CTA's work under the contract. Second, an additional expenditure of personnel time was required to perform again the Social Security recovery work and for re-auditing of that work. Third, plaintiff is personally liable for the $150,000 spent under the CTA contract because Section 406 of the Pittsburgh Home Rule Charter renders the controller and all sureties jointly and severally liable for all funds unlawfully disbursed.

Defendants, Schmeiser, Stone, Herbert and Ellis have moved to dismiss for lack of standing. In addition, defendants, Schmeiser and Stone have moved for attorney's fees under Fed.R.Civ.P. 11.

## II. *Discussion*

When faced with a motion to dismiss, a district court must determine whether the allegations of the complaint, taken as true and in a light most favorable to the plaintiff, state a claim recognized at law and upon which relief can be granted. *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). To make such a determination, the court must consider the allegations of the complaint and exhibits attached thereto, and take judicial notice of relevant laws. *Iacaponi v. New Amsterdam Casualty Co.,* 379 F.2d 311 (3d Cir. 1967), *cert. denied,* 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849 (1968). Defendants challenge the instant complaint on the ground that no injury is alleged and, therefore, no relief can be granted.

Actual or threatened injury is a precedent to recovery in federal court. As the Supreme Court stated in *Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983), abstract injury is not enough for a plaintiff to state a claim recognized under the "case or controversy" requirement of Article III of the United States Constitution. A plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not conjectural or hypothetical. *Id.* at 102, 103 S.Ct. at 1665.

The requirement of actual injury assures that "the legal questions presented to the court will be resolved, not in the rarified [sic] atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). A federal court does not place its imprimatur upon the actions of a plaintiff or defendant; it seeks only to grant relief where the plaintiff has been injured wrongfully by the defendant. Article III, therefore, restricts the exercise of judicial power, which can "so profoundly affect the lives, liberty, and property of those to whom it extends," to litigants "who can show injury in fact resulting from the action which they seek to have the Court adjudicate." *Valley Forge College, supra* at 473, 102 S.Ct. at 759.

In the instant case, the Controller asserts jurisdiction under Sections 1964(a) and (c) of the Racketeer Influenced Corrupt Organizations Act of 1970. 18 U.S.C. §§ 1964(a) and (c). Section 1964(c) states:

Any person injured in his business or property by reason of a (RICO) violation ... may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Plaintiff states that his "property" has been injured because he is strictly liable to the City for $150,000 for approving a

fraudulent contract for CTA. His second alleged injury is to his "business" in that the controller's office had to divert time and resources to conduct an audit of CTA's work and to recalculate the Social Security overpayments.

We find no injury, real or threatened, to plaintiff's "property." The complaint does not allege that the City or the FICA Trust Account has demanded that plaintiff pay the contract price, nor does the complaint allege that any demand has been threatened. Although not relevant to whether the complaint has stated an actual injury, the Solicitor of the City has stated under oath that "[t]he City has no intention of seeking any damages against Mr. Flaherty or his office resulting from his signing of the warrant." Affidavit of D.R. Pellegrini, at paragraph 7.

Plaintiff argues, however, that no demand by the City is necessary for standing. He contends that he is injured as a matter of law because the Pittsburgh Home Rule Charter renders him strictly liable for $150,000. Plaintiff implores this court to take judicial notice of such liability so that he can assert a civil action under RICO. In his 107-page brief opposing the motions to dismiss, plaintiff's counsel assumes the awkward position of arguing that his client is liable in order to allege an injury. An example of this stance can be found at page 32 of the brief: "Both the Plaintiff's statutory liability for unlawful disbursements (which is the concomitant of his power to determine the legality of all payments in the first instance) and his additional undertaking under the terms of his bond compel the conclusion that the Plaintiff is strictly liable for unlawful disbursements from the Treasury of the City of Pittsburgh."

■ We find plaintiff to be unnecessarily contrite. Thousands of potential defendants have escaped strict liability because suit was never filed. They have not raced to the courthouse to assert what amounts to a counterclaim before they were threatened with liability. Indeed, a federal district court cannot exercise subject matter jurisdiction where the federal question appears only as a defense. *Pan American Petroleum Corporation v. Superior Court of Delaware*, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961). Plaintiff cites *The Dimitrios Chandris*, 43 F.Supp. 829 (E.D.Pa.1942), *aff'd*, 133 F.2d 124 (3d Cir. 1943), for the proposition that actual injury occurs where a litigant is faced with strict liability imposed by statute. In that case, however, standing existed because a fine was imposed yet not paid; standing did not exist before the fine was imposed by the proper authorities.

Further, we note that plaintiff is seeking approximately $500,000 in money damages for alleged injuries. He is not seeking declaratory relief for threatened injuries under the Home Rule Charter. Plaintiff alleges actual, compensable injuries, not a threatened future injury. Reading the complaint in a light most favorable to plaintiff, we cannot find any actual, compensable injury to plaintiff's property.

■ Secondly, plaintiff alleges actual, compensable injury to his "business" under jurisdiction granted by Section 1964(c) of RICO. The Controller argues that defendants' alleged RICO violation forced his staff to conduct an audit beyond the normal course of business. Plaintiff alleges injury to his "business" because "this audit disrupted the normal course of business by making it necessary to reallocate staff and supervisory time thus curtailing the ability of Plaintiff's office to perform its several duties mandated by law." Plaintiff's brief at 91–92.

The exhibits to the complaint reveal that plaintiff does not exercise autocratic control over the city controller's office. Exhibit B indicates that the office is a department of the City of Pittsburgh. Accordingly, the controller's office is not plaintiff's "business" within the meaning of Section 1964(c). Moreover, if any losses were incurred as a result of the CTA contract and the special audit, such losses were incurred by the City. The complaint does not state that the controller's office suffered any particular loss. In fact, the special audit

report, attached to the complaint as an exhibit, states unequivocally at p. 7 that: *"The City of Pittsburgh has suffered a financial loss* as a result of the negligent performance of CTA in calculating the Social Security refunds. As a result *the City must use their own employees* to recalculate the refunds to ensure that each employee receives the correct amount." (Emphasis added.)

As an alternative basis for standing, plaintiff argues that he should be permitted to recover from defendants because the City will not take such actions for political reasons or conflicts of interest. Plaintiff states that the Solicitor, empowered to file suit to recover damages from the principals in the CTA contract, has refused to take action because of loyalty to Stone and Schmeiser.

Third-party standing is generally discouraged in federal court. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "The plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499, 95 S.Ct. at 2205. This rule assures the court that the issues before it will be concrete and sharply presented. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The Supreme Court has found third-party standing under Article III's case or controversy requirement in those rare cases where practical obstacles prevent a party from asserting rights on its own behalf. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Although the Solicitor's alleged loyalties may frustrate plaintiff, these loyalties do not present the City with practical obstacles to enforcement of its rights. In any event, this alternative theory of third-party standing is not evident from the allegations of the complaint.

Our holding today is based solely on plaintiff's failure to allege actual injury to meet Article III's "case or controversy" requirements. Because the claim is brought under RICO, which grants standing to "[a]ny person injured," we need not consider standing provisions of the Pennsylvania Rules of Civil Procedure (Pa.R. C.P. 2102(b) or the City's Home Rule Charter (Section 201). 18 U.S.C. 1964(c). The Supremacy Clause, which elevates federal law above that of the states, requires us to consider whether plaintiff has standing under federal law upon his federal law claim. U.S. Const. art. VI, cl. 2. *Jersey Central Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1110 (3d Cir.1985).

Also, today's holding does not deprive plaintiff of state court remedies. If, as plaintiff alleges, the City of Pittsburgh is not taking appropriate action to recover losses incurred in the CTA contract, plaintiff may seek writs of mandamus or prohibition. These writs, which would compel the City to perform duties imposed by law, are available through Pennsylvania courts. *Branchick v. Commonwealth, Department of Labor and Industry,* 496 Pa. 280, 436 A.2d 1182 (1981); *Commonwealth, et rel. Camelot Detective Agency, Inc. v. Specter,* 451 Pa. 370, 303 A.2d 203 (1973). Under the facts as alleged, the remedy of mandamus is not available in federal court. 28 U.S.C. § 1361.

■ Next, we consider the motion for attorney's fees and costs filed by Stone and Schmeiser. Fed.R.Civ.P. 11 states that, if a pleading is interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, the court shall impose upon the person who signed it and the represented party an appropriate sanction, which may include attorney's fees and court costs. Defendants argue that plaintiff instituted the instant suit solely to embarrass defendants and to gain publicity for himself to further political ambitions. While we have addressed only his standing, and not the merits of a RICO claim, it is arguable that a proper plaintiff may successfully bring a RICO action against these defendants. Therefore, the underlying claim is not frivolous. Whether the instant complaint was intended to harass, we cannot say with a reasonable degree of confidence. Plaintiff did conduct a news confer-

ence after filing the complaint and gained publicity, but he was quoted as saying that any recovery would inure to the City of Pittsburgh. His intent is unclear. Defendants' motions for counsel fees will be denied.

### III. *Summary*

Because the complaint has not alleged an actual injury, real or threatened, plaintiff has not presented an Article III case or controversy over which this court has jurisdiction. Plaintiff's complaint will be dismissed. In addition, we shall dismiss the pendent state law claim under the doctrine of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Because sufficient evidence does not support defendants' assertion that the complaint was filed for an improper purpose, defendants' motions for attorney's fees and costs will be denied.