**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 29, 2003**

Charles R. Fulbruge III
Clerk

**REVISED JUNE 27, 2003**

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

—————————

**No. 00-60153**

—————————

**BENNIE WHITEHEAD; ET AL.,**

Plaintiffs,

versus

**FOOD MAX OF MISSISSIPPI, INC.; ET AL.,**

Defendants,

**K MART CORPORATION,**

Defendant-Appellee,

versus

**PAUL S. MINOR,**

Appellant.

—————————————————————————————————

**Appeal from the United States District Court**
**for the Southern District of Mississippi**

—————————————————————————————————

Before KING, Chief Judge, and JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, DENNIS, and CLEMENT, Circuit Judges.[1]

RHESA HAWKINS BARKSDALE, Circuit Judge:

---

[1] Judge Prado, who joined our court subsequent to *en banc* oral argument, did not participate in this decision.

Pursuant to Federal Rule of Civil Procedure 11, the district court sanctioned Paul S. Minor, an attorney, for obtaining a writ to execute judgment. The primary reason for our *en banc* review is to decide whether the district court abused its considerable discretion in imposing sanctions for Minor's violation of Rule 11(b)(1) ("improper purpose" in obtaining writ of execution). The district court acted within its discretion. **AFFIRMED**.

## I.

In May 1997, the district court entered an approximate $3.4 million judgment for Minor's clients against Kmart Corporation in an action arising out of heinous acts by two individuals not associated with Kmart: their abduction of a mother and her daughter from a Kmart parking lot in Jackson, Mississippi, and the subsequent rape of the mother. A jury found Kmart negligent in failing to provide adequate parking lot security. *See* **Whitehead v. Food Max of Miss., Inc.**, 163 F.3d 265 (5th Cir. 1998).

At trial, Minor was sanctioned $1,000 for violating, during his closing argument, an earlier warning by the district court. *Id*. at 277 n.3. This followed Minor's refusals during trial to follow other court instructions. *See* *id*. at 276-77.

In June 1997, shortly after entry of judgment, Kmart moved for a remittitur or, alternatively, a new trial. *See* FED. R. CIV. P. 59. In addition, pursuant to Federal Rule of Civil Procedure 62(b), it requested a stay of execution of judgment pending

2

resolution of those post-trial motions. That stay motion was not decided, however, until 18 August, when the Rule 59 motions were denied. The accompanying stay motion was then dismissed as moot. That same day, the district court denied Minor's request to reconsider the $1,000 sanctions imposed at trial.

Three days later, using a handwritten request he had signed, Minor obtained from the district court clerk a writ of execution for the judgment (the writ). In addition, Minor notified the media about the pending execution. With media representatives and two United States Marshals, Minor entered the Kmart (the abduction had occurred in its parking lot) and attempted to execute the judgment by seizing currency in the cash registers and vault. The seizure was delayed to allow Kmart's employees a chance to consult with their management and attorneys; shortly thereafter, it was stayed by the district court. No cash was seized.

While at the Kmart, Minor was interviewed by the media; news reports about the writ-execution, including Minor's extremely hyperbolic, intemperate, and misleading comments (improper comments), were, among other media, broadcast in at least three television reports. Minor characterized Kmart's actions as "arrogan[t]" and "outrageous" and asserted Kmart "wo[uld no]t pay" the judgment; claimed Kmart had been "warned" before the abduction that "an event like [that] was going to happen" but "didn't care"; charged his clients had been twice "victimized" by Kmart, once by

3

being abducted there and once by Kmart's "not paying ... a just debt"; and proclaimed he was there to ensure Kmart did what it was supposed to do.[2]

That same day, the district court held a teleconference with the parties:  Kmart was directed to submit a supersedeas bond (it later did so); and Kmart advised it would seek sanctions against Minor.  Kmart soon moved for sanctions, pursuant, *inter alia*, to Rule 11.

Kmart charged Minor had violated an automatic ten-day stay of execution of judgment, claimed to be in effect pursuant to Federal Rule of Civil Procedure 62(f), which incorporated Mississippi Rule of Civil Procedure 62(a).  Federal Rule 62(f) provides:

> **Stay According to State Law.**  In any state in which a *judgment is a lien* upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is *entitled*, in the district court held therein, to *such stay as would be accorded the judgment debtor had the action been maintained in the courts of that state*.

FED R. CIV. P. 62(f) (emphasis added).  Mississippi Rule 62(a) provides in part:

> **Automatic Stay; Exceptions.**  Except as stated herein or as otherwise provided by statute or by order of the court for good cause shown, no execution shall be issued upon a judgment nor

---

[2]     It is extremely regrettable that, in the light of Minor's conduct, especially his improper comments, the dissent views "Minor's technique ... [as] colorful to say the least", **Dissent** at 11-12, and "perhaps in poor taste", **id**. at 14.

4

> shall proceedings be taken for its enforcement *until the expiration of ten days after its entry or the disposition of a motion for a new trial, whichever last occurs.*

MISS. R. CIV. P. 62(a) (emphasis added).

Kmart maintained: pursuant to Mississippi Rule 62(a), a ten-day stay is automatic in state court after disposition of a new trial motion; therefore, application of that rule, through Federal Rule 62(f), resulted in a stay from the 18 August denial of Kmart's new trial motion. Kmart also asserted: Minor, with "numerous newspaper reporters and television interview teams", and without justification, "paraded through [Kmart] in full view of customers and employees ... orchestrat[ing] damage to Kmart, its business and goodwill"; and his "improper purpose" (proscribed by Rule 11(b)(1)) was obvious from these actions. Provided with the motion were copies of two articles from newspapers in Jackson and another city in Mississippi and a videotape of television broadcasts about the attempted execution. These items included Minor's improper comments.

Minor responded: following denial of the new trial motion, Kmart had not *moved*, pursuant to Federal Rule 62(f), for the Mississippi Rule 62(a) automatic stay; therefore, no stay had been in effect. (Nothing in the record indicates Minor contended in district court that the judgment did not constitute a lien against Kmart's property (one of the prerequisites for a Federal Rule 62(f) stay).)

5

Minor also contended:  seeking to obtain a portion of the judgment was not an improper purpose proscribed by Rule 11(b)(1); and, "where counsel's action has a reasonable basis under the law, a court will not find an improper purpose...."  Minor's affidavit stated he attempted execution in order to obtain a portion of the judgment because:  (1) Kmart had not returned his telephone calls concerning potential settlement; and (2) he was concerned that Kmart, which he believed to be self-insured, had not posted a supersedeas bond.

The district court apparently delayed ruling on the sanctions motion pending Kmart's appeal from the judgment in the underlying action.  For that appeal, our court held the jury had been influenced by passion and prejudice resulting from Minor's closing argument; the action was remanded in early 1999 for a new trial on damages.  *See **Whitehead***, 163 F.3d at 276-78, 281.  That March, in the light of extensive briefing, oral argument (January 1998), and painstaking analysis of the authority construing Federal Rule 62(f), the district court ruled on the sanctions motion.

In a well-reasoned opinion, the court concluded:  a motion is not a prerequisite to a stay under Federal Rule 62(f); and Kmart was protected by the stay against the attempted execution. ***Whitehead v. Kmart Corp.***, 202 F. Supp. 2d 525, 529-32 (S.D. Miss. 1999).  Concomitantly, the court concluded that Minor had "failed to make a reasonable inquiry into the law governing execution of

6

judgments...." *Id.* at 532. The court also ruled Minor "was seeking to embarrass [Kmart] and call attention to himself as a tireless laborer of the bar attempting to obtain justice for his client when, in fact, there was no basis whatsoever in fact or in law for the actions taken...." *Id*. at 533.

Minor was ordered to pay Kmart approximately $8,000 — its attorney's fees for opposing the execution. *Id*. Although Kmart had requested a public apology by Minor, the district court determined, and Kmart agreed, that publication of the sanctions opinion would suffice. *Id*. (The opinion was published in 2002, after rendition of the now-vacated panel opinion for this appeal.)

Following the remand-trial on damages, Minor appealed the Rule 11 sanctions. In January 2002, a divided panel reversed them. *Whitehead v. Food Max of Miss., Inc.*, 277 F.3d 791 (5th Cir.), *vacated by* 308 F.3d 472 (5th Cir. 2002) (en banc). (The panel majority included a district judge and Judge Henry A. Politz, who authored the opinion. Judge Politz died prior to our deciding to review this appeal *en banc*.)

Regarding Rule 11(b)(2) (objective reasonableness of inquiry concerning existing law), the panel majority held: as a matter of law, Federal Rule 62(f) does not afford the stay provided by state law unless the judgment debtor files a motion claiming the stay; accordingly, no stay was in effect; and the record did not support

7

a conclusion that, before requesting the writ, Minor failed to make a reasonable inquiry into the governing law. *Id*. at 794-96.

Concerning Rule 11(b)(1) (improper purpose), the panel majority held:  Minor's "intentional use of publicity for the *purpose of embarrassing an adversary*" was "*patently inappropriate*"; but, absent exceptional circumstances, an ulterior motive should not be read into a document filed for a legitimate purpose; and "any consequences that ... flow[ed] from such behavior" was a decision for the state bar. *Id*. at 796-97 (emphasis added).

The dissent urged that the district court did not abuse its discretion in concluding independent subparts (b)(1) and (2) were each violated. *Id*. at 797-802 (Barksdale, J., dissenting). Regarding subpart (b)(2), the dissent stated:  it was not necessary to decide, as the majority had, whether a motion is required to trigger a Federal Rule 62(f) stay; at issue was whether Minor's actions were objectively reasonable in the light of *then existing* legal authority; and, they were not. *Id*. at 800-802.  As for subpart (b)(1), the dissent stated:  Minor's "improper purpose" provided a separate basis for the sanctions; and they were appropriate in the light of Minor's media-actions, precisely the type of conduct Rule 11 is designed to remedy. *Id*.  at 802.

Kmart petitioned for panel rehearing.  In September 2002, our court decided *sua sponte* to review *en banc*, thereby vacating the panel opinion.  308 F.3d 472 (5th Cir. 2002) (en banc).

8

II.

Rule 11(b) provides in pertinent part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or *other paper*, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*, —
>
> > (1) *it is not being presented for any improper purpose, such as to harass* or to cause unnecessary delay or needless increase in the cost of litigation; [and]
> >
> > (2) the claims, defenses, and other *legal contentions therein are warranted by* existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law....

FED. R. CIV. P. 11(b) (emphasis added). Each obligation must be satisfied; violation of either justifies sanctions. *See, e.g., Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999). And, in determining compliance *vel non* with each obligation, "the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances". *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994).

Rule 11 sanctions are reviewed only for an abuse of discretion, *e.g., Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 884 (5th Cir. 1997), including reviewing

9

factual findings only for clear error, *e.g.*, **Crowe v. Smith**, 261 F.3d 558, 564 (5th Cir. 2001). This abuse of discretion standard is necessarily very deferential, for two reasons.

First, "based on its '[f]amiliar[ity] with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and *apply the fact-dependent legal standard mandated by Rule 11*'". **Lulirama, Ltd.**, 128 F.3d at 884 (quoting **Cooter & Gell v. Hartmarx Corp.**, 496 U.S. 384, 402 (1990); emphasis added). *See also* **Mercury Air Group, Inc. v. Mansour**, 237 F.3d 542, 548 (5th Cir. 2001) ("the imposition of sanctions is often *a fact-intensive inquiry*, for which the *trial court is given wide discretion*" (emphasis added)).

Second, the district judge is independently responsible for maintaining the integrity of judicial proceedings in his court and, concomitantly, must be accorded the necessary authority. *See, e.g.*, **Cooter & Gell**, 496 U.S. at 404; **NASCO, Inc. v. Calcasieu Television and Radio, Inc.**, 894 F.2d 696, 702-03 (5th Cir. 1990) (discussing inherent power of court), *aff'd sub nom.* **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991).

It was for these reasons that our court, in **Thomas v. Capital Security Servs., Inc.**, 836 F.2d 866, 872 (5th Cir. 1988) (en banc), established abuse of discretion, rather than in part *de novo*, as our standard of review for Rule 11 sanctions. This was confirmed

10

by the Supreme Court in *Cooter & Gell*, partly with reasoning that rings true here:

> Rule 11's policy goals also support adopting an abuse-of-discretion standard. The district court is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence. *Deference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them. Such deference* will streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court; it will also discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation.

496 U.S. at 404 (emphasis added).

For this deferential review, the "district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence". *Id*. at 405. "Generally, an abuse of discretion only occurs where *no reasonable person* could take the view adopted by the trial court." *Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 578 (5th Cir. 2002) (internal quotation omitted; emphasis added)[3].

---

[3] The dissent does not even mention the deferential standard of review (important to our ruling); nor does it appear to review the sanctions under that deferential standard. In fact, it appears to forget that it was the district court, not this court, that decided Minor's conduct was violative of Rule 11 and, pursuant to its considerable discretion, imposed those sanctions.

A.

Subparts (b)(1) and (2) of Rule 11 provide independent bases for sanctions. The district court concluded Minor violated each subpart; therefore, it is only necessary to decide whether he violated one.

1.

Regarding subpart (b)(2) (objective reasonableness of inquiry concerning existing law), Minor's affidavit in opposition to sanctions stated he relied upon: (1) *Van Huss v. Landsberg*, 262 F. Supp. 867 (W.D. Mo. 1967) (*dictum*; Minor had cited this opinion earlier in opposing Kmart's motion for Federal Rule 62(b) stay pending resolution of its post-trial motions); (2) WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2907 (1995) (motion for Federal Rule 62(f) stay *should*, *not must*, be filed); and (3) the district court's earlier denial (as moot) of Kmart's post-trial request for the Federal Rule 62(b) stay. The district court ruled that this authority, when juxtaposed against the plain language of the rules, did not support an objectively reasonable belief that no stay was in effect. *See Whitehead*, 202 F. Supp. 2d at 528-32.

Along this line, the panel majority focused on whether, as a matter of law, a motion is required to invoke the stay; it held that it was and that, as a result, no stay was in place to protect Kmart from execution. Instead, the panel should have addressed whether Minor's belief was objectively reasonable *at the time* he

12

requested the writ. *See, e.g., **Thomas***, 836 F.2d at 874 (proper focus is "snapshot" of instant when document signed). In any event, because subparts (b)(1) and (2) provide independent bases for sanctions, it is not necessary to decide whether the district court abused its discretion concerning subpart (b)(2). For purposes of deciding whether sanctions could be based on subpart (b)(1), we will assume Minor did not violate subpart (b)(2).

2.

After determining Minor failed to make a reasonable inquiry (violating subpart (b)(2)), ***Whitehead***, 202 F. Supp. 2d at 529-32, and then addressing why Rule 11's "safe harbor" provision (subpart (c)(1)(A)) did not shelter Minor, *id*. at 532-33, the district court stated:

> *Additionally*, [Kmart] has submitted to this court several of the *articles and news reports* which were generated in the local press by the improper execution of judgment in the instant case. *It is clear from these unchallenged submissions that [Minor] was seeking to embarrass [Kmart] and call attention to himself as a tireless laborer of the bar* attempting to obtain justice for his client when, *in fact, there was no basis whatsoever in fact or in law for the actions taken on August 21, 1997.* Thus, this court is persuaded that the imposition of appropriate sanctions in this case is justified and proper.

*Id*. at 533 (emphasis added). As discussed *infra*, this subpart (b)(1) "improper purpose" ruling is sufficient to sustain the sanctions.

Minor insists we must decide the subpart (b)(2) issue, asserting that the subpart (b)(1) improper purpose ruling is inextricably intertwined with whether, under subpart (b)(2), he had an objectively reasonable belief that a stay did not exist. He claims: "[I]f there was authority that even arguably supported what [he] did, there was no basis for the sanctions motion". In support, Minor notes that the district court's improper purpose ruling states "there was no basis whatsoever in fact or in law for [Minor's] actions...." *Id*. at 533.[4]

---

[4] Likewise, the dissent insists that these bases are intertwined; insists on a rigid, several step evaluation-process; and erroneously claims we attribute "legitimate purpose" findings to the district court. This view appears to be based on a pre-1993 version of Rule 11. For example, the dissent relies upon case law that was decided under the previous version, under which these bases were not separated into specific, enumerated subparts. That case law correctly states the test under that previous rule: where a paper was "well grounded in fact and warranted by existing law", sanctions were imposed only under unusual circumstances. (Unlike the district court, the dissent ignores the well grounded *in fact* portion of the test (now subparts (b)(3) and (b)(4)) in contending that subparts (b)(1) and (b)(2) are intertwined.) We do not suggest that this case law is not instructive. In fact, for that reason, we cite some of the same case law. On the other hand, this case law does not support the dissent's view of subparts (b)(1) and (b)(2) as intertwined. The structure of the current rule (as amended in 1993) belies such a notion.

In any event, for purposes of deciding this appeal, it is not necessary to determine how Rule 11 in its present form might compel revising the test for improper purpose, as adopted for the former version of the Rule. The issue was not presented to our court. Moreover, the district court's improper purpose ruling, discussed *infra*, would easily pass muster under the test employed by the dissent.

14

It is true that, generally, district courts do not sanction attorneys who make nonfrivolous representations. A district court may do so, however, where it is objectively ascertainable that an attorney submitted a paper to the court for an improper purpose. FED. R. CIV. P. 11(b)(1). *See, e.g., **Sheets v. Yamaha Motors Corp.**,* 891 F.2d 533, 537-38 (5th Cir. 1990); ***Nat'l Ass'n of Gov't Employees, Inc. v. Nat'l Fed'n of Fed. Employees***, 844 F.2d 216, 224 (5th Cir. 1988).

***Sheets***, for instance, held filing excessive motions could constitute harassment proscribed by Rule 11, even if the motions were well-founded in law or fact. 891 F.2d at 538. Filing otherwise legitimate documents that use abusive language toward opposing counsel could also violate the rule, ***Coats v. Pierre***, 890 F.2d 728, 734 (5th Cir.), *cert. denied*, 498 U.S. 821 (1990), as could filing a valid pleading or motion without a sincere intent to pursue it, ***Cohen v. Virginia Elec. & Power Co.***, 788 F.2d 247 (4th Cir. 1986).

We conclude that the district court's "improper purpose" ruling was independent from its "inquiry concerning existing law" ruling. We base this upon the following factors: (1) the parties' having squarely placed the improper purpose issue before the district court; (2) its earlier citation to subpart (b)(1) in quoting all of Rule 11(b) in its order, ***Whitehead***, 202 F. Supp. 2d at 526 n.1; (3) its subsequent specific enumeration of Rule 11

15

bases, including improper purpose, *id*. at 532 ("Minor presented to this court [a writ-execution request] certifying [(a)] that to the best of his knowledge, information, and belief, formed after a [reasonable] inquiry ... that the [request] was proper; and [(b)] *that the letter requesting the writ of execution was not being presented for any improper purpose, such as to harass....*"; emphasis added); (4) its then concluding Minor failed to make a subpart (b)(2) reasonable inquiry into the law, *id*. at 532; and (5) its then discussing Rule 11's "safe harbor" provision, *id*. at 532-33, before making its subpart (b)(1) improper purpose ruling, *id*. at 533. To conclude otherwise would render the improper purpose portion of the opinion superfluous. Moreover, the two subparts concern quite different considerations. And, again, the fact-driven improper purpose ruling can be sustained even if (as we assume for our analysis) there were a basis in law for Minor's obtaining the writ. The two bases were not intertwined.

3.

A district court may sanction an attorney for presenting a paper to the court for "*any* improper purpose, *such as to harass....*" FED. R. CIV. P. 11(b)(1) (emphasis added). Although a district court is not to read an ulterior motive into a document "well grounded in fact and law", it may do so in exceptional cases, such as this, where the improper purpose is objectively ascertainable. *See **Sheets***, 891 F.2d at 537-38.

16

The district court *found* Minor had two improper purposes *for requesting the writ*: to embarrass Kmart; and to promote himself. ***Whitehead***, 202 F. Supp. 2d at 533. Part of our abuse of discretion review is to determine whether the district court's ruling was "based ... on a clearly erroneous assessment of the evidence". ***Cooter & Gell***, 496 U.S. at 405. Pursuant to the well-known standard of review for clear error *vel non*, we may disturb factual findings, which often involve credibility choices, only if a review of all the evidence leaves us with "the definite and firm conviction that a mistake has been made". ***Tulia Feedlot, Inc. v. United States***, 513 F.2d 800, 806 (5th Cir.), *cert. denied*, 423 U.S. 947 (1975).

In maintaining he had legitimate, not improper, purposes, Minor offered two reasons to the district court for obtaining the writ: obtaining part of the judgment for his clients; and trying to force settlement. The factual findings related to these two reasons were not clearly erroneous.

Obviously, there would not have been enough cash at one local Kmart to satisfy the $3.4 million judgment. In addition, the execution was unnecessary to secure the judgment; the judgment constituted a lien against Kmart's property in Mississippi. Again, nothing in the record indicates Minor disputed in district court that the judgment constituted such a lien. *See, e.g.,* MISS. CODE ANN. § 11-7-191; *see also* FED. R. CIV. P. 62(f). Minor notes that

17

Kmart is *currently* in bankruptcy; this, of course, is irrelevant to Minor's purpose *at the time in question* (August 1997). In any event, even if Minor's purpose were only to obtain a portion of the judgment, the district court did not clearly err in finding Minor also had separate, improper purposes.

Assuming *arguendo* that attempting to force settlement is proper, *but see, e.g.,* **Elster v. Alexander**, 122 F.R.D. 593, 604 (N.D. Ga. 1988) (attempt to coerce settlement *not* proper), Minor offered the following explanation to the district court: he had attempted to contact Kmart, but it had refused to return his telephone calls or speak to him about the case; therefore, he was forced to take this drastic measure to open lines of communication.

The record, however, contains only one letter from Minor requesting settlement discussions (3 June 1997, shortly before Kmart filed its post-trial motions). That letter does not reflect how many calls were made by Minor. In any event, his claim that Kmart refused all communication is belied by his letter: "I am sorry we have been missing each other *and I appreciate you returning my phone calls*". (Emphasis added.)

Minor's letter states he was attempting to ascertain whether Kmart wished to engage in settlement discussions before posting an appeal bond. At the time of the letter, through mid-August, Kmart's post-trial motions (*e.g.* for a new trial) were pending. After the court ruled on the motions, Minor gave Kmart only three

18

days before attempting to execute. There is no evidence that Minor attempted to contact Kmart during this three-day period. Accordingly, it was not clearly erroneous for the district court to reject Minor's claim that he was forced to obtain the writ in order to initiate settlement discussion.

In addition, it was not clearly erroneous for the district court, by implication, to find that neither of these claimed purposes explained either Minor's presence at the execution or his collateral media play. The execution did not require Minor to accompany the two United States Marshals to the Kmart (especially where, as here, the involved property was well-known, open, and obvious). *See* FED. R. CIV. P. 69. *See also* MOORE'S FEDERAL PRACTICE — CIVIL § 69.02 (2002). And, the execution certainly did not require the media's presence at the Kmart or the improper comments Minor made there to the media.

In fact, Minor *does not dispute* that he *intended* to embarrass Kmart or that he was seeking personal recognition. Most regrettably, he contends that these are far from being evidence of an improper purpose in obtaining the writ (e.g., "[a]lmost everything an attorney in litigation does ... is designed to embarrass an opponent in one way or another"; "establishing a reputation for success in the representation of clients is the most professional way for a lawyer to build a practice"). It was not

19

clearly erroneous for the district court to find that each of Minor's intended goals was evidence of an improper purpose.

Claiming a *purpose to embarrass* is different than *one to harass*, Minor seems to contend that, because Rule 11 explicitly refers to harassment, and because that was not his purpose, his *admitted intent to embarrass* cannot be an improper purpose under the rule. On this record, there is no meaningful distinction between these two purposes, especially in the light of our deferential standard of review. *See, e.g.,* **Flaherty v. Torquato**, 623 F. Supp. 55, 59-60 (W.D. Pa. 1985) (using harass and embarrass interchangeably in context of Rule 11 improper purpose discussion), *aff'd by* 800 F.2d 1133 (3rd Cir. 1986). Regardless, Minor misreads Rule 11.

Even assuming that Minor's purpose to embarrass Kmart was not, in essence, a purpose to harass, Rule 11's list of improper purposes is only illustrative; "to harass" is but one of the possible improper purposes. FED. R. CIV. P. 11(b)(1) ("*any* improper purpose, *such as* to harass..." (emphasis added)).

The media event orchestrated by Minor, in particular, constitutes objective evidence of his improper purpose in obtaining the writ. *See, e.g.,* **Ivy v. Kimborough**, 115 F.3d 550, 553 (8th Cir. 1997) (no abuse of discretion in imposing Rule 11 sanctions, where, *inter alia*, conduct was "aimed at the media" and "primarily for local media consumption"); **Kramer v. Tribe**, 156 F.R.D. 96

20

(D.N.J. 1994), *aff'd without opinion*, 52 F.3d 315 (3rd Cir.), *cert. denied,* 516 U.S. 907 (1995) (imposing Rule 11 sanctions because, among other things, giving misleading reports to media demonstrated improper purpose motives (including intent to embarrass)). Again, the district court had an unchallenged videotape of, *inter alia*, Minor's improper comments. The district court's finding "[i]t ... *clear* from [the] unchallenged" newspaper articles and videotape that Minor had an improper purpose, **Whitehead**, 202 F. Supp. 2d at 533 (emphasis added), is a classic example of Minor's being "[h]oist with his own petard". WILLIAM SHAKESPEARE, HAMLET act 3, sc. 4. Minor's improper comments, preserved by the very entity he enlisted to embarrass Kmart and promote himself were, instead, arguably the best evidence of his improper purpose in obtaining the writ.

Before our *en banc* court, Minor raises, for the first time, First Amendment considerations with regard to his improper comments. No authority need be cited for the rule that, because the record does not reflect that Minor raised these points in district court, we will not consider them on appeal. In any event, the improper purpose in obtaining the writ, not the vehicle (such as the media) used to implement that improper purpose, is what is decided by the sanctioning court and reviewed on appeal. In other words, under subpart (b)(1), Minor's attempted execution is not the issue; his underlying "improper purpose" in obtaining the writ is.

The collateral media play simply constitutes objective evidence of that improper purpose.

Finally, Minor asserts that, although his conduct may not have been "civil", it is not sanctionable. He maintains: civility is "aspirational" and beyond the power of the law; and if our court wants to impose civility rules, we should adopt them. Along this line, Minor takes issue with any suggestion in the vacated panel opinion that his conduct was unethical. *See* **Whitehead**, 277 F.3d at 796-97. He further contends: even if his conduct were unethical, the appropriate remedy would be referral to the state bar for possible discipline, not imposition of Rule 11 sanctions. This issue is also raised for the first time on appeal. Because the vacated panel opinion addressed the issue in part, *see id.*, we will consider it.

Minor again understates the severity of his conduct and overlooks both the district court's broad authority to impose Rule 11 sanctions and our deferential standard of review. Whether Minor's conduct violated civility and ethics rules is for others to act upon; in any event, his conduct violated Rule 11.

These categories are not mutually exclusive. For example, the rules advisory committee has recognized that some overlap exists between state bar discipline and Rule 11 sanctions; its notes to Rule 11 state that one possible sanction for a violation of Rule 11 is referral to a state bar authority. *See also* **Kramer**, 156 F.R.D.

22

96 (imposing sanctions *and* referring matter to state bar). District courts have an independent duty to maintain the integrity of the judicial process and may impose Rule 11 sanctions where necessary, regardless of whether state bar discipline is concurrent.

Rule 11 limits sanctions "to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated". FED. R. CIV. P. 11(c)(2). In addition to publishing its sanctions opinion, the district court limited the sanctions to "the reasonable attorneys' fees and other expenses incurred as a direct result of the violation", *id*. Minor does not challenge this aspect of the order.

4.

In sum, there was no abuse of discretion. The district court spoke with counsel, including Minor, on the day of the incident and was quite familiar with the parties and litigants. Minor's execution attempt followed his improper conduct at trial. *See Whitehead*, 163 F.3d at 276-77 n.3; *see also* FED. R. CIV. P. 11 advisory committee's note ("whether [sanctionable conduct] was part of a pattern of activity, or an isolated event" is "[a] proper consideration").

Generally, writ-execution for the purpose of satisfying a judgment is proper. Minor's conduct, however, was exceptional. Although it was only *three days* after disposition of post-trial

23

motions, with significant time remaining for Kmart to appeal the judgment and post a supersedeas bond, Minor, after obtaining the execution writ: invited the media to one of Kmart's places of business to execute judgment in plain view of Kmart's customers and employees; and made improper comments to the media regarding the case, Kmart, and Kmart's willingness to satisfy the judgment.

The district court found, based in part on the videotape, that Minor had improper purposes in obtaining the writ: to embarrass Kmart and advance his personal position. The district court, of course, is in a far better position than we to balance the considerations underlying rulings on Rule 11 sanctions, most especially the concomitant factual findings (including credibility choices). Obviously, this is why we review its decision under a very deferential abuse of discretion standard. For the subpart (b)(1) improper purpose ruling: the record does not support these findings being clearly erroneous; nor was there "an erroneous view of the law". *See* ***Cooter & Gell***, 496 U.S. at 405.

### B.

Minor moves for summary reversal and imposition of sanctions against Kmart, or for remand for fact-finding and such sanctions, contending: Kmart caused the attempted execution by earlier, false responses during discovery that it was self-insured; and, had Minor known of insurance covering the judgment, he would not have

attempted to execute. (It appears Kmart was partly self-insured, with umbrella coverage.)

The relief sought by Minor's motion was requested, for the first time, while this appeal was pending. In his motion, Minor stated this claim was neither known, nor confirmed, until well after his appeal was filed. The panel majority did not address the motion, in the light of its reversing the sanctions. *Whitehead*, 277 F.3d at 791.

Minor fails to connect how his understanding of Kmart's self-insured status justified his improper-purpose conduct. Kmart's discovery responses do not affect the considerations underlying whether Minor's purpose in obtaining the writ was proper. (We express no opinion on whether Minor can seek relief in district court based on the challenged discovery responses.)

### III.

For the foregoing reasons, the sanctions are **AFFIRMED**; Minor's motion for summary reversal or remand is **DENIED**.

*SANCTIONS AFFIRMED*; MOTION DENIED

25

KING, Chief Judge, with whom SMITH and BENAVIDES, Circuit Judges, join, dissenting:

The majority, appellate judges all, are plainly exercised about lawyer Paul Minor's efforts to collect his clients' judgment against Kmart. In their effort to declare the kind of behavior that will not be accepted by this court, they have short-circuited the inquiry mandated by Rule 11 and our own case law, with potentially far-reaching consequences. I respectfully dissent.

In evaluating a district court's imposition of sanctions under Rule 11(b)(1), this and other circuits generally look first to the district court's findings on whether the filing at issue was warranted by existing law or a nonfrivolous argument for a change in the law (as required by Rule 11(b)(2)); look next to the findings on whether the filing was presented for an improper purpose under Rule 11(b)(1); look next to the findings on whether the filing was also presented for a legitimate purpose; and finally look to the district court's evaluation of whether any improper purpose is sufficient under the circumstances to support sanctions under Rule 11(b)(1). If the district court has correctly found a legitimate purpose for the filing, this and other circuits have been reluctant to approve the imposition of sanctions for an improper purpose under Rule 11(b)(1). Here, by contrast, the majority presents the two relevant subparts of Rule 11 as not intertwined for purposes of assessing Rule 11(b)(1) sanctions. The

26

majority then goes on to credit the district court with making crucial findings on both legitimate and improper purposes that the district court plainly did not make. The majority winds up by affirming the district court's conclusion that sanctions are warranted under Rule 11(b)(1) where it is not at all clear that the district court concluded as much. This entire method of evaluating sanctions assessed under Rule 11 effectively eviscerates what were, up until this point, critical aspects of the Rule 11 framework.

**I.**

**ANALYSIS OF THE FRAMEWORK FOR SANCTIONS UNDER RULE 11(b)(1)**

**A.    The Interrelation of Rule 11(b)(1) and 11(b)(2)**

Rule 11(b)(2) explicitly requires that an attorney submit a paper to the court only after forming a reasonable belief that it is warranted by existing law (or a non-frivolous argument for a change in the law) and Rule 11(b)(1) explicitly precludes an attorney from submitting a paper for certain "improper purposes."[5]

---

[5]The two relevant subparts of Rule 11 state that:

(b)    By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
(1)    it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2)    the claims, defenses, and other legal contentions therein are warranted by existing

27

The subsections thus appear to be quite discrete textually. However, our case law demonstrates that the subsections are actually interrelated in at least one situation: "When a [paper] is well grounded in fact and warranted by existing law, 'only under <u>unusual circumstances</u> . . . should the filing of [the paper] constitute sanctionable conduct." <u>F.D.I.C. v. Calhoun</u>, 34 F.3d 1291, 1300 (5th Cir. 1994) (emphasis added) (quoting <u>Sheets v. Yamaha Motors Corp., U.S.A.</u>, 891 F.2d 533, 538 (5th Cir. 1990)). This circuit has extended this logic in concluding that "[a]lthough the filing of a paper for an improper purpose is not immunized from rule 11 sanctions simply because it is well grounded in fact and law, <u>only under unusual circumstances</u> – such as the filing of excessive motions – should the filing [] constitute sanctionable conduct." <u>Sheets</u>, 891 F.2d at 538 (emphasis added).

What this precedent says is that (1) a favorable finding regarding Rule 11(b)(2) should influence a district court's conclusion regarding the existence of an "improper purpose" sanction under Rule 11(b)(1), and (2) only in the most exceptional circumstances will this court uphold sanctions under Rule 11(b)(1) when a paper satisfies the Rule 11(b)(2) requirements.

---

> law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

FED. R. CIV. P. 11(b)(1)-(2).

28

Here, the majority first concludes, correctly, that "the two subparts [Rule 11(b)(1) and Rule 11(b)(2)] concern quite different considerations" but then concludes, incorrectly, that they need "not" be "intertwined" in the Rule 11(b)(1) inquiry. Our precedent does not support that. In the interest of bypassing an evaluation of the district court's possibly incorrect finding under Rule 11(b)(2), the majority has announced a rule (that the Rule ll(b)(1) and 11(b)(2) inquiries need not be intertwined in a situation where Rule 11(b)(1) sanctions are to be imposed) that is directly at odds with our precedent. In my view, that is a serious mistake, now bad law.[6]

---

[6]In footnote 4, the majority states that: "In any event, for purposes of deciding this appeal, it is not necessary to determine how Rule 11 in its present form might compel revising the test for improper purpose, as adopted for the former version of the Rule." This statement underscores a critical shortcoming with the majority's opinion. It announces a new rule (that the Rule 11(b)(1) and 11(b)(2) inquiries are unrelated in a fact pattern where Rule 11(b)(1) sanctions are to be imposed, even if the paper at issue was submitted in compliance with Rule 11(b)(2)), but says it does not, and then announces that, in any event, knowledge of the applicable Rule 11(b)(1) framework is not necessary for sanctions to be imposed here.

In contrast, I see the framework as critical. The facts related to the "improper" nature of Minor's presenting the writ to the district court must be funneled through the correct framework before the imposition of sanctions can be deemed appropriate. As taught by our case law (which has not been questioned until today and which is plainly cited by the majority for the exact proposition for which the dissent cites the same case law), if the relevant filing satisfies Rule 11(b)(2) requirements and is found to have been presented for a legitimate purpose, we are extremely reluctant to approve the imposition of sanctions for an improper purpose under Rule 11(b)(1). If the majority seeks to alter this clear rule, it should say so (and maybe it has, who's to say?) and then apply its new rule to the facts of this case.

29

**B.    The Necessary Predicate to Impose Sanctions under Rule 11(b)(1)**

Our case law makes clear that the next step in the framework for imposing "improper purpose" sanctions is the consideration by the district court of legitimate and improper purposes the litigant or party may have had for submitting the relevant paper.  In its quest to uphold the district court's imposition of sanctions, the majority attributes findings to the district court regarding this legitimate purpose step that the district court clearly did not make, and attributes a legal conclusion to the district court regarding whether sanctions are warranted independently under Rule 11(b)(1) that the district court may not have even made.

Assuming the district court finds a legitimate purpose or purposes for the relevant filing, then it must weigh the legitimate purposes against any illegitimate purposes and evaluate whether the illegitimate purposes are sufficient in themselves to independently support sanctions under Rule 11(b)(1).  As we stated in <u>National Association of Government Employees, Inc. v. National Federation of Federal Employees</u>, 844 F.2d 216 (5th Cir. 1988):

> We do not condone litigation instituted for ulterior purposes rather than to secure judgment on a well-grounded complaint in which the plaintiff sincerely believes.  <u>Yet the Rule 11 injunction against harassment does not exact of those who file pleadings an undiluted desire for just deserts</u> . . . [T]he court must focus on objectively ascertainable circumstances that support an inference that a filing harassed the defendant or caused unnecessary delay.  As Judge Schwarzer has stated: "If a reasonably clear legal justification can be shown for the

> filing of the paper in question, no improper purpose can be found and sanctions are inappropriate" . . . A plaintiff must file a complaint [] in order to vindicate his rights in court. We find no indication that the filing here was unnecessary, for the [defendants] had refused to retract the [alleged defamatory] statement. Under the circumstances, the [plaintiff] had a <u>proper interest</u> in suing to attempt to vindicate its reputation.

<u>Id.</u> at 223-24 (internal footnote omitted and emphasis added). Thus, as interpreted by our court, before a district court can impose sanctions under Rule 11(b)(1), it must consider any legitimate or proper purposes the litigant or attorney may have had in presenting a paper to the district court. Before today, we were loath to find that an attorney's or litigant's illegitimate purpose could independently support sanctions where a legitimate purpose for filing the relevant paper also existed.

Here, paying lip service to the required inquiry into legitimate purposes, the majority upholds as "not clearly erroneous" factual findings rejecting Minor's proffered legitimate purposes for seeking the writ of execution (to satisfy part of the judgment for his client in order to pay medical bills and to encourage settlement). However, though I have thoroughly searched the district court's order, I find no mention, much less discussion, of any possible legitimate or proper purpose. This necessary predicate is simply not there.

The Fourth Circuit case of <u>In re Kunstler</u>, 914 F.2d 505 (4th Cir. 1990), discusses the importance of the critical step omitted by the district court:

31

Rule 11 defines the term "improper purpose" to include factors "such as to harass or to cause unnecessary delay or needless increase in the costs of litigation." The factors mentioned in the rule are not exclusive. If a complaint is not filed to vindicate rights in court, its purpose must be improper. However, if a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose. Thus, the purpose to vindicate rights in court must be central and sincere . . . In other words, it is not enough that the injured party subjectively believes that a lawsuit was brought to harass, or to focus negative publicity on the injured party.

Id. at 518 (emphasis added). Kunstler's holding accords with our circuit precedent. If an illegitimate purpose does not engulf an individual's legitimate purpose, sanctions under the "improper purpose" section of Rule 11 cannot stand. Because the district court overlooked this important inquiry, our court has no place upholding findings that are not even there.

In addition to attributing factual findings to the district court that it did not make, the majority jumps to the support of a legal conclusion that the district court may not have even made. The majority points to a single paragraph in the district court's eighteen-page order that references Minor's desire to embarrass Kmart and to gain publicity for himself as indisputably demonstrating an intention on the part of the district court to sanction Minor independently under Rule 11(b)(1). However, it is not clear, much less "indisputable," from this single paragraph

32

that the district court intended to sanction Minor under Rule 11(b)(1) as independent from Rule 11(b)(2), especially as this paragraph expressly states that "<u>there was no basis whatsoever in fact or in law</u> for the actions taken on August 21, 1997." Whether there is a basis in law is clearly the relevant inquiry under Rule 11(b)(2), not Rule 11(b)(1). Further, the district court does not use any of the descriptive language found in Rule 11(b)(1)'s non-exclusive list, such as "harass." While this is not required, I would expect to see some discussion regarding a comparison between "harass" and "embarrass" if the district court truly intended (as the majority assumes) to use the terms interchangeably and to sanction Minor independently under Rule 11(b)(1).[7] At a minimum, I would expect the district court to have at least mentioned either the subpart dealing with "improper purpose" or the term "improper

---

[7]Further, the majority goes so far as to state, without discussion, that "[o]n this record, there is no meaningful distinction between these two purposes ["harass" and "embarrass"], especially in the light of our deferential standard of review." In support of this statement, it cites to <u>Flaherty v. Torquato</u>, 623 F. Supp. 55, 59-60 (W.D. Pa. 1985), <u>aff'd without op.</u>, 800 F.2d 1133 (3d Cir. 1986), as "using harass and embarrass interchangeably in context of Rule 11 improper purpose discussion." However, a cursory read of this non-binding district court opinion reveals that the court does not use these terms interchangeably in its decision to <u>decline</u> to award sanctions. <u>Id.</u> Moreover, we have on occasion discussed "harass" in the context of Rule 11(b)(1) to cover conduct such as the "filing of excessive motions." <u>Nat'l Assoc. of Gov't Empl.</u>, 844 F.2d at 224. This connotation comports with the general usage and understanding of "harass" – annoyance or exhaustion with the added characteristic of persistency or repetitiveness –  as opposed to "embarrass" – mere distress or self-consciousness. <u>See</u> WEBSTER'S NEW COLLEGIATE DICTIONARY 370, 522 (1977).

33

purpose" itself in this paragraph, particularly given the extent of the discussion regarding Rule 11(b)(2).

In the past, when an order imposing sanctions contained such shortcomings, we refused to supply the necessary findings and conclusions on appeal because we, as appellate judges, must not become fact finders.  See, e.g., F.D.I.C. v. Calhoun, 34 F.3d 1291, 1297 (5th Cir. 1994) ("We have long held that a district court, in applying sanctions, may have to make a detailed explanation for its legal reasons. . . . The purpose of creating such a record is simple: In order to guard against the application of hindsight by district courts who have sat through long, complicated, and often contentious proceedings, we must not be put in the position of having to guess what unwarranted factual or legal errors were the basis of the sanctions."); United States v. U.T. Alexander, 981 F.2d 250, 253 (5th Cir. 1993) ("The district court here did not cite any 'unusual circumstances' that warranted sanctions.  The court merely asserted the view that the claim was filed for an improper purpose.  Even though detailed findings are not required to uphold an award of sanctions, there must be some record to review.").  Today the majority back-pedals from this precedent to supply – and, indeed, even credit the district court with – the necessary factual predicate omitted by the district court and to supply a legal conclusion that may not have been made by the district court.  I cannot subscribe to this technique.

## THE "UNUSUAL" OR "EXCEPTIONAL" CIRCUMSTANCES REQUIREMENT

Our precedent is clear. Even assuming the district court had made appropriate factual findings on whether Minor had a legitimate purpose for obtaining the writ of execution here, in situations where an attorney or party submits a paper that is well-grounded in law under Rule 11(b)(2) – as the majority assumes arguendo to be the case here – "improper purpose" sanctions may be imposed by a district court only in "unusual" or "exceptional" circumstances. I disagree with the majority's implied finding that this case presents such "unusual" circumstances.

To date, we have not found a case with such "unusual circumstances" to merit upholding an "improper purpose" finding where (as is assumed to be the case here) the filing of the paper satisfies the Rule 11(b)(2) requirements. See, e.g., Calhoun, 34 F.3d at 1300; Sheets, 891 F.2d at 538; Nat'l Assoc. of Gov't Empl., 844 F.2d at 224.[8] In this spirit, I disagree with the majority

---

[8]Coats v. Pierre, 890 F.2d 728 (5th Cir. 1989), is the closest we have come to such a finding. There, a teacher who was denied tenure and not rehired brought a civil rights action alleging wrongful termination in retaliation for exercising free speech. Id. at 731. We upheld Rule 11 sanctions for the plaintiff's harassing filings, which stated that opposing counsel "acted like a little nasty dumb female Mexican pig in heat" and that she was "nothing but garbage." Id. at 734. Although the district court failed there to make a specific finding that the suit was groundless, it concluded that sanctions were warranted because the plaintiff's allegations were "totally unsupported by any of the people [he] called from the university" and his filing was "worse than outrageous," was "unconscionable" and was worthy of "contempt"

that this case should serve as the benchmark for district courts imposing "improper purpose" sanctions in the future. With only a finding by the district court of an intent to embarrass one's opponent and an intent to gain publicity for oneself – both quite common characteristics in a judgment or debt collection setting – the case will serve as a poor litmus, particularly given that the district court did not even consider whether Minor had a legitimate purpose for the filing. As things appear to me, the majority employs an "I know it when I see it" approach to judging Minor's technique, substituting its own findings where the district court made none.

The majority shames Minor for conduct it determines does not befit an upstanding officer of the court. Specifically, it appears most perturbed regarding Minor's offensive tow of the media to the judgment collection. I admit that Minor's technique here is colorful to say the least. However, other courts have looked at similar circumstances and have not been so critical of the litigants' choice of litigation tactics. See, e.g., Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 80 (2d Cir. 2000) (stating that airing grievances and threatening litigation through letters "are commonplace" and that "[s]imilarly, the court's concern that

---

proceedings. Id. The case before us is clearly distinguishable from Coats. The district court in Coats found the lawsuit unsupportable in law whereas here, the majority assumes the opposite – that is, it assumes that it was objectively reasonable under existing fact and law for Minor to file the writ of execution with the district court.

36

[plaintiff] had in fact tarnished [defendant's] reputation by speaking with a news reporter was not a proper basis for sanctions" under Rule 11); Sussman v. Bank of Israel, 56 F.3d 450, 459 (2d Cir. 1995) ("The district court held that the filing of the complaint with a view to exerting pressure on defendants through the generation of adverse and economically disadvantageous publicity reflected an improper purpose. To the extent that a complaint is not held to lack foundation in law or fact, we disagree. It is not the role of Rule 11 to safeguard a defendant from public criticism that may result from the assertion of nonfrivolous claims."); In re Kunstler, 914 F.2d 505, 520 (4th Cir. 1990) ("Holding a press conference to announce a lawsuit, while perhaps in poor taste, is not grounds for a Rule 11 sanction, nor is a subjective hope by a plaintiff that a lawsuit will embarrass or upset a defendant, so long as there is evidence that a plaintiff's central purpose in filing a complaint was to vindicate rights through the judicial process."). Further, in each of the cases cited by the majority in support of its determination that "improper purpose" sanctions are warranted here, the district court had specifically found that the relevant filing was not well-grounded in law under Rule 11(b)(2). See Ivy v. Kimbrough, 115 F.3d 550, 553 (8th Cir. 1997) (sanctioning the plaintiff and his attorney for bringing a frivolous action against a police officer and judge involved in his arrest subsequent to a marital dispute because "the court, with good cause, gave [the plaintiff and his

attorney] repeated warning that their claims appeared to be frivolous, that much of their conduct seemed aimed at the media, and that failure to properly pursue this lawsuit risked dismissal and possible sanctions"); <u>Kramer v. Tribe</u>, 156 F.R.D. 96 (D.N.J. 1994) (sanctioning an attorney under Rule 11(b)(1) and (b)(2), § 1927 and its inherent authority through fines, submission of counsel to attorney disciplinary authorities and submission of counsel to criminal authorities where the attorney had no legitimate purpose for filing the suit and had a history (at least 36 instances) of unethical conduct before the courts), <u>aff'd without op.</u>, 52 F.3d 315 (3d Cir. 1995); <u>Elster v. Alexander</u>, 122 F.R.D. 593, 604 (N.D. Ga. 1988) (imposing Rule 11 sanctions where "pleadings and papers filed on behalf of plaintiff . . . were filed without that reasonable inquiry which Rule 11 requires"). These cases thus provide little support for the majority because, in contrast to these cases, the majority here presumes (in the face of what may well be problematic findings to the contrary by the district court) that the writ filed by Minor <u>was</u> well-grounded in law as required by Rule 11(b)(2).

I agree with the original panel's determination that Minor's conduct, while perhaps in poor taste, does not merit sanctions under Rule 11(b)(1). We, as appellate judges, operate at a far remove from the business of collecting judgments or effecting settlements. We ought to refrain from excoriating a lawyer based upon our own sensibilities when the district court, closer to that

38

business than we are, has not provided a clear and explicit predicate for the exercise of our judgment.

## III.

### WHAT WE SHOULD HAVE DONE

I think that we should take the district court at its word and review the judgment that it did enter – sanctions based on a violation of Rule 11(b)(2). I think that the district court's conclusions on that violation are probably wrong, although I agree with Judge Barksdale's original dissent insofar as it stated that neither the district court nor the panel was required to decide whether a motion is necessary to trigger the Mississippi Rule 62(a) automatic stay. As Judge Barksdale said, the inquiry is, instead, whether Minor undertook a reasonable inquiry into the authority regarding Fed. R. Civ. P. 62(f) and, if he did, whether his actions were objectively reasonable. My own conclusion is that Minor did make a reasonable inquiry into the authority (scarce as it is to this good day); I am less certain about whether his action in executing the judgment without prior court authorization was objectively reasonable, given the paucity of authority on the subject. But under the circumstances, I would not uphold sanctions against Minor for what amounts at most to a mistake of judgment on that score. I would vacate the sanctions order.

39